**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>**KELLY WOLFE, *et al.*,**</td><td>*</td><td></td></tr>
<tr><td>**Plaintiffs,**</td><td>*</td><td></td></tr>
<tr><td>**v.**</td><td>*</td><td>**Case No.: GJH-20-1246**</td></tr>
<tr><td>**COLUMBIA COLLEGE, INC., *et al.*,**</td><td>*</td><td></td></tr>
<tr><td>**Defendants.**</td><td>*</td><td></td></tr>
</table>

\* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Plaintiffs Kelly Wolfe and Odilia Maya bring suit against Defendants Columbia College, Inc., Susie Bae, and Joanna Hyeonjeong for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") as well as various state law claims, including wrongful discharge, battery, assault, intentional infliction of emotional distress, negligence, false imprisonment, and violations of the Maryland Wage Payment and Collection Act, Md. Code, L.E., § 3-501, *et seq*. ECF No. 10. Pending before the Court is Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment. ECF No. 11.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendants' Motion is granted, in part, and denied, in part.

---

[1] Also pending is Plaintiffs' Consent Motion for Extension of Time to File Response, ECF No. 14, which is granted.

# I.     BACKGROUND[2]

## A. Plaintiffs' Allegations

Plaintiff Kelly Wolfe, a Maryland resident, was hired as a Marketing Admission Representative for Defendant Columbia College, Inc. ("Columbia College") on May 5, 2019. ECF No. 10 ¶¶ 1, 13. Plaintiff Wolfe is originally from Peru and is "of Spanish/Latino descent." *Id.* ¶ 10. Although Columbia College is based in Vienna, Virginia, *id.* ¶ 3, Plaintiff Wolfe worked at its Silver Spring, Maryland campus, *id.* ¶ 13. Plaintiff Wolfe was supervised by Defendant Joanna Hyeonjeong, Campus Director for the College's Silver Spring, Maryland location, and Defendant Susie Bae, the Silver Spring location's Assistant Director. *Id.* ¶ 16. Both Defendants Hyeonjeong and Bae are of Korean descent. *Id.* In addition to Plaintiff Wolfe and Defendants Hyeonjeong and Bae, two other individuals worked in the office: one named Leo, of Korean descent, and another named Ali, "of middle-eastern descent." *Id.* ¶ 17.

Plaintiff Wolfe alleges that, beginning in June 2019, Defendants Hyeonjeong and Bae began a campaign of intimidation and harassment against her. *Id.* ¶ 18. Specifically, Defendant Hyeonjeong pulled Plaintiff Wolfe "into a private classroom and berated her for telling another co-worker about her hourly rate," *id.* ¶ 19; took Plaintiff Wolfe's "social security card out of her purse to intentionally conceal it from her," *id.* ¶ 20; pulled her "into a private classroom to berate her about her clothing," *id.* ¶ 21; excluded Plaintiff Wolfe from team meetings, *id.* ¶ 23; grabbed and pulled her hair, *id.* ¶ 24; "forced [Plaintiff] Wolfe to answer a call while she [was] on lunch, *id.* ¶ 25; and "hit [Plaintiff] Wolfe in her ear intentionally," *id.* Additionally, Defendant Bae "ripped and destroyed [Plaintiff] Wolfe's notes in front of her," *id.* ¶ 22; made "belittling

---

[2] Unless otherwise noted, the facts are drawn from Plaintiffs' Amended Complaint and are accepted as true. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

remarks" to Plaintiff Wolfe about a "Latino/Spanish student" asking, "is he Latino?" and "does he speak Spanish?" before stating, "I do not have time for that," *id.* ¶ 28; told Plaintiff Wolfe that she "can't stand listening [to] Spanish," *id.*; "grabbed [her] and shook her in a sexually suggestive manner," including "rubb[ing] her body against her backside," *id.* ¶ 29; and "squeezed [Plaintiff] Wolfe's neck while she was working at a computer," *id.* ¶ 30. Both individual Defendants forced Plaintiff Wolfe "to work without lunch breaks and disallowed [her] from eating in the kitchen," *id.* ¶ 25; "refuse[d] to speak with Latino/Spanish students at the college," *id.* ¶ 26; and refused to talk to Plaintiff Wolfe in English and spoke in Korean in order to exclude her, *id.* ¶ 27.

Plaintiff Wolfe's mother, Plaintiff Odilia Maya, is a student at Columbia College. *Id.* ¶ 34. According to the Amended Complaint, on or about November 5, 2019, Plaintiff Maya went to the Silver Spring location "because she left books there" and because she wanted to take time off from school in order to "assist her other daughter." *Id.* ¶ 36. The Amended Complaint further alleges that Plaintiff Maya was upset due to ongoing bullying from other students. *Id.* Defendant Bae told Plaintiff Maya that she would need additional documents in order to take time off from classes, but Plaintiff Maya did not have the required documents. *Id.* ¶ 37. Defendant Bae then ordered Plaintiff Maya to sign documents permanently withdrawing her from Columbia College, but Plaintiff Maya refused. *Id.* ¶ 38. The Amended Complaint states that, "[w]ith a pen in her hand, [Defendant] Bae profusely stated to [Plaintiff] Maya, 'Sign, Sign, Sign..!'" and, when Plaintiff Maya did not do so, Defendant Bae "assaulted" her by stabbing her with a pen, "severely bruis[ing]" her. *Id.* ¶¶ 38–39. Pictures showing Plaintiff Maya with a bruised arm are attached to the Amended Complaint. ECF No. 10-1. Plaintiff Wolfe's coworker, Ali, had to restrain Defendant Bae against the wall. ECF No. 10 ¶ 39. Defendant Hyeonjeong, also present,

said, "she deserves it." *Id.* Plaintiff Wolfe witnessed the entire encounter and had to take her mother to the hospital afterward. *Id.* Plaintiff Maya had several doctors' appointments and sought therapy for the incident, and Plaintiff Wolfe also sought treatment for emotional distress related to witnessing Defendant Bae's conduct against her mother. *Id.* ¶ 40. Plaintiff Maya filed a police report and criminal complaint for assault and battery against Defendant Bae in Montgomery County District Court. *Id.* ¶ 41.

The Amended Complaint alleges that, on the same day as the alleged assault, November 5, 2019, Plaintiff Wolfe asked to speak with Defendant Hyeonjeong about the discrimination and hostile work environment she had been experiencing, but Defendant Hyeonjeong refused. *Id.* ¶ 32. When, that same day, she approached Defendant Bae about her concerns, Defendant Bae told Plaintiff Wolfe, "if you go to HR, then you will see what [Defendant Hyeonjeong] is going to do to you." *Id.* ¶ 33.[3] It is unclear from the Amended Complaint whether these interactions happened before or after the incident involving Plaintiff Maya.

The following day, November 6, 2019, Plaintiff Wolfe went to the Vienna, Virginia campus to discuss the discrimination and violent conduct she and her mother had experienced with an individual in Human Resources named Jinny Kim. *Id.* ¶ 42. Kim allegedly told Plaintiff Wolfe that she "knew everything." *Id.* That same morning, believing that Human Resources ignored her complaint, Plaintiff Wolfe shared her concerns with others in Columbia College's administration building. *Id.* ¶ 43. She also attempted to speak with the Columbia College

---

[3] In an affidavit filed with Plaintiffs' Opposition to Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment, Plaintiff Wolfe further states that, "[a]t various times between August 2019 to November 2019, Susie routinely told me that if I were to report the abuse to Human Resources or senior officials in Vienna, Fairfax, I would have to face" Defendant Hyeonjeong. ECF No. 15-1 at 1. Additionally, in October 2019, Defendant Bae "used her finger and made a 'slashing throat' gesture towards" Plaintiff Wolfe as a threat to prevent her from reporting their conduct. *Id.* at 2.

president, who was in a meeting, and successfully met with Columbia College's vice president, who stated, "we know about the incident," and said he would set up a meeting with Plaintiff Wolfe, Defendant Hyeonjeong, and Jinny Kim. *Id.* ¶¶ 44–45.

Plaintiff Wolfe was then informed by email, also on November 6, 2019, that she had been terminated. *Id.* ¶ 46. In an affidavit filed with Plaintiffs' Opposition to Defendants' Motion, Plaintiff Wolfe insists that she did not learn of her termination until that date. ECF No. 15-1 at 2.[4] Attached to the affidavit is an email from Defendant Hyeonjeong, sent at 12:47 pm on November 6, 2019, stating, "[a]s I gave you notice verbally on Monday, November 4th, I am giving you 2 week notice of job termination." ECF No. 15-1 at 5.

The Amended Complaint further alleges that, after Plaintiff Wolfe's termination, Defendant Hyeonjeong continued harassing her, including going to Plaintiff Wolfe's home unannounced. ECF No. 10 ¶ 47. Finally, Plaintiff Wolfe alleges that she has not received her final wages, amounting to between $500 and $1,000. *Id.* ¶ 48.

### B. Defendants' Version of Events

Defendants tell a vastly different story. According to Defendants, Plaintiff Wolfe was fired for cause on November 4, 2019. ECF No. 11-2 ¶ 2. Specifically, Defendant Hyeonjeong states in an affidavit attached to Defendants' Motion that, "[o]n Friday[,] November 1, 2019, it came to my attention that Ms. Wolfe had been contacting students and former students, whose contact information she obtained from internal college files, to ask inappropriate questions about a former student, a graduate of Columbia College's English as a Second Language program." *Id.* ¶ 3. She confronted Plaintiff Wolfe about the issue on Monday, November 4, 2019, but Plaintiff

---

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Wolfe denied the behavior, then made excuses for it, and "did not understand that her unauthorized use of student information was a serious offense." *Id.* Defendant Hyeonjeong states that she gave Plaintiff Wolfe a two-week notice of termination that day. *Id.*

The following day, Defendant Hyeonjeong says she had an hour-long meeting with Plaintiffs Wolfe and Maya in which they argued for Plaintiff Wolfe's reinstatement. *Id.* ¶ 4. Defendant Hyeonjeong did not change her decision and asked Defendant Bae to escort Plaintiff Wolfe back to work and Plaintiff Maya back to class. *Id.* An hour later, Defendant Bae returned, having continued speaking with Plaintiffs for that hour. *Id.* Plaintiff Maya stated that she intended to withdraw from her course at the college due to Plaintiff Wolfe's termination, and Defendant Bae attempted to help her, but Plaintiff Maya would not sign the withdrawal form. *Id.* Plaintiff Wolfe then "yelled about a lack of respect for her mother, and her mother slammed her palms on a table, refusing to sign." *Id.* Defendant Hyeonjeong states that she "did not see anything resembling an attack by Ms. Bae; she did not even touch Ms. Maya or Ms. Wolfe. Instead, [Defendant Hyeonjeong] saw her offer Ms. Maya a pen to sign the form, which offer was rebuffed." *Id.*

Defendant Hyeonjeong further disputes Plaintiff Wolfe's allegations concerning discrimination, stating that she never pulled Plaintiff Wolfe's hair or otherwise physically harmed her, *id.* ¶ 5; that she never made Plaintiff Wolfe work during her lunch hour, *id.* ¶ 7; and that Plaintiff Wolfe did not make "any complaint to [Defendant Hyeonjeong] relating to discrimination as a result of or on account of her national origin prior to her termination," *id.* ¶ 6. Regarding the events after Plaintiff Wolfe's termination, Defendant Hyeonjeong states that Plaintiff never returned for work after November 5, 2019, and thus did not work the remainder of her two weeks of employment. *Id.* ¶ 7. Defendant Hyeonjeong also says she "personally

delivered her final paycheck to [Plaintiff Wolfe's] house, and deposited it in her mailbox, hoping to speak with her and calm her." *Id.*

Attached to Defendant Hyeonjeong's affidavit is a letter informing Plaintiff Wolfe of her termination as of November 15, 2019, stating:

> Your position was terminated with cause as a result of your conduct. You used students' information to find out what is not related to your duties concerning school and, in the process, you changed your words so many times; you lost your credibility from your colleagues. Over the past few months, you did not prove yourself to be an efficient worker and did not measure up to my expectation as described in your job description.

ECF No. 11-3. The letter is dated November 4, 2019. *Id.*

Defendant Bae's affidavit aligns with Defendant Hyeonjeong's account. She states that after Defendant Hyeonjeong asked her to escort Plaintiffs out on November 5, 2019, they continued to argue with Defendant Bae and that Plaintiff Maya eventually stated an intent to withdraw from the program. ECF No. 11-4 ¶ 3. Defendant Bae states that she provided her the form, but Plaintiff Maya became angry. *Id.* Then, "[a]fter about an hour-long meeting, the interactions became loud, and attracted more people." *Id.* Defendant Bae states that she offered Plaintiff Maya a pen, but she did not take it. *Id.* She further says that she did not touch or stab Plaintiff Maya. *Id.* Defendant Bae acknowledges that Plaintiff Maya filed criminal charges against her for assault, but says the charges were dismissed "after I explained the circumstances." *Id.* ¶ 4. Finally, Defendant Bae states that she has never discriminated against or inappropriately touched Plaintiff Wolfe and has not seen anyone else do so. *Id.* ¶ 5.

Finally, Jinny Kim, the College's Human Resources Director in 2019, states in an affidavit, "I became aware that Ms. Hyeonjeong, director of the Maryland campus, had fired Kelly Wolfe for cause in November 2019." ECF No. 11-5 ¶ 2. She further states that "several weeks after" Plaintiff's termination, Plaintiff arrived at Kim's office in Virginia and expressed

concerns about her mother's treatment, but did not raise any issues concerning discriminatory, harassing, or retaliatory conduct against herself. *Id.* ¶ 3.

### C. Procedural History

Plaintiff Wolfe filed charges with the Equal Employment Opportunity Commission and received a right to sue notice. ECF No. 10 ¶ 9. On May 19, 2020, Plaintiff Wolfe filed suit in this Court, bringing claims of disparate treatment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), as well as various state law claims, including wrongful discharge, battery, assault, intentional infliction of emotional distress, and failure to pay wages earned in violation of the Maryland Wage Payment and Collection Act, Md. Code, L.E., § 3-501, *et seq.* ECF No. 1. Defendants filed a Motion to Dismiss for Failure to State a Claim on July 22, 2020. ECF No. 7. On August 17, 2020, Plaintiff Wolfe filed an Amended Complaint, adding her mother, Odilia Maya, as a plaintiff. ECF No. 10. The Amended Complaint contained four additional claims asserted by Plaintiff Maya: battery, negligence, intentional infliction of emotional distress, and false imprisonment. *See id.* Defendants filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment on September 1, 2020. ECF No. 11. Plaintiffs filed an Opposition on September 30, 2020, ECF No. 15, and Defendants replied on October 12, 2020, ECF No. 16.

## II. MOTION TO DISMISS, OR FOR SUMMARY JUDGMENT ON, PLAINTIFF WOLFE'S CLAIMS

### A. Standard of Review

Defendants move to dismiss Plaintiff Wolfe's claims under Federal Rule of Civil Procedure 12(b)(6). ECF No. 11 at 1. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do")).

"'[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendants' Motion is styled as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 11. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

When the moving party styles its motion as a "Motion to Dismiss or for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre- or post-discovery).

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23.

A material fact is one "that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248–49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The Court may rely on only facts supported in the

record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

While the Court may rule on a motion for summary judgment prior to commencement of discovery, *see, e.g.*, *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 286 (2d Cir. 2000), Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be denied when the nonmovant has not had the opportunity to discover information that is essential to his opposition." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (internal citation and quotation marks omitted). To obtain Rule 56(d) relief, the non-moving party bears the burden of showing how discovery "could possibly create a genuine issue of material fact sufficient . . . to survive summary judgment, or otherwise affect the court's analysis." *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015) (internal citation and quotation marks omitted).

To adequately raise the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002) (discussing affidavit requirement of former Rule 56(f). Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified

in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs. LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see also Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008).

Because the Court considers evidence submitted by the parties, Defendants' motion will be reviewed as a Motion for Summary Judgment.

## B. Discussion

### 1. Title VII Claims

#### a. Disparate Treatment

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). "In general, *at trial* a plaintiff 'may establish a discrimination claim under Title VII through two avenues of proof.'" *Ryan v. McAleenan*, No. ELH-19-1968, 2020 WL 1663172, at *11 (D. Md. Apr. 3, 2020) (per curiam) (quoting *Thomas v. Delmarva Power & Light Co.*, 715 F. App'x 301, 302 (4th Cir. 2018)) (emphasis in *Ryan*). The plaintiff's first avenue is to offer "direct or indirect" evidence of discrimination under "ordinary principles of proof." *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997). Direct evidence might include "statements by the plaintiff's supervisor that unlawful discrimination was the motive for

an adverse employment action," while circumstantial evidence could include "statements of the plaintiff's supervisor that are discriminatory, but require an additional inference in order to conclude that unlawful discrimination was the motivation for the specific, contested adverse employment action." *Monk v. Potter*, 723 F. Supp. 2d 860, 875 n.4 (E.D. Va. 2010), *aff'd sub nom. Monk v. Donahoe*, 407 F. App'x 675 (4th Cir. 2011).

The plaintiff's second avenue is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that approach, a three-step framework, Plaintiff must first establish a *prima facie* case of discrimination. *See id.* If a plaintiff establishes a *prima facie* case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). "If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted." *Tex. Dep't. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 (1981). In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993). The plaintiff must then prove, by a preponderance of evidence, that the legitimate reason asserted is pretextual— "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516–20; *Adams v. Trs. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and*

that discrimination was the real reason.'" (quoting *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995))) (emphasis in *Jiminez*).

To establish a *prima facie* case of employment discrimination, the plaintiff must show: (i) the plaintiff's membership in a protected class; (ii) satisfactory job performance; (iii) the existence of an adverse employment action; and (iv) circumstances which give rise to an inference of unlawful discrimination. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012); *Burdine*, 450 U.S. at 254. "In order to make out a *prima facie* case of discriminatory termination, a plaintiff must ordinarily show that the position ultimately was filled by someone not a member of the protected class." *Brown v. McLean*, 159 F.3d 898, 905 (4th Cir. 1998); *Miles v. Dell, Inc.*, 429 F.3d 480, 486 (4th Cir. 2005) ("[T]his rule is so well-settled in this circuit that we have previously affirmed dismissals under prong four without even issuing published decisions."). However, in cases where the hiring and firing decisions were made by different individuals, this requirement may be relaxed. *Miles*, 429 F.3d at 489.

Plaintiff Wolfe does not plead the elements of a *prima facie* case; thus, the Court presumes Plaintiff intends to proceed by demonstrating direct or circumstantial evidence of discrimination.

Plaintiff Wolfe alleges that she was discriminated against on the basis of her national origin, race, and sex. ECF No. 10 ¶ 50. Although she does not specify the adverse employment action being challenged in her Disparate Treatment claim, based on the Amended Complaint in its entirety, the Court can presume it is her termination.

In support of her claim, Plaintiff Wolfe alleges that she is a woman from Peru and is of "Spanish/Latino descent." *Id.* ¶ 10. Plaintiff further alleges that she is of a different race and

national origin than her coworkers and supervisors, *see* ECF No. 10 ¶¶ 10, 16–17; that Defendant

Bae "made belittling remarks to Wolfe about a Latino/Spanish student who needed assistance at

the college," *id.* ¶ 28; that Plaintiff saw Defendants Hyeonjeong and Bae "refuse to speak with

Latino/Spanish students at the college," and that, "[o]n more than one occasion," Defendant

Hyeonjeong told Plaintiff that if an individual "is Spanish, I don't want to speak to them," *id.* ¶¶

12, 26; and that Defendant Hyeonjeong told Plaintiff not to speak Spanish, *id* ¶ 12. These actions

are alleged to have begun shortly after she was hired and to have continued until the time she

was terminated. Notably, some of these facts focus on the Spanish language, rather than Hispanic

identity.[5] The Court recognizes that "[l]anguage and national origin are not interchangeable,"

*Napreljac v. John Q. Hammons Hotels, Inc.*, 461 F. Supp. 2d 981, 1029 (S.D. Iowa 2006), *aff'd*,

505 F.3d 800 (8th Cir. 2007), and "non-English speakers . . . are not a protected class under Title

VII," *Betances v. Prestige Decorating & Wallcovering, Inc.*, No. 05 Civ. 4485, 2006 WL

963877, at *2 (S.D.N.Y. Apr. 13, 2006). Nevertheless, given the association between the Spanish

language and Hispanic identity, the Court finds that, in this case, the derogatory comments about

Spanish speakers combined with the alleged abusive treatment of Plaintiff by her superiors, *see,*

*e.g.*, *id.* ¶¶ 22–24 (allegations that Plaintiff was excluded from meetings, had her notes ripped

from her and destroyed, and had her hair grabbed and pulled), and her termination, all taking

---

[5] In her affidavit accompanying Plaintiffs' Opposition, Plaintiff Wolfe states that she is Hispanic. ECF No. 15-1 ¶ 1. The Court thus adopts Plaintiff Wolfe's use of this term, recognizing it to be generally synonymous with Latino/a as well as gender-inclusive alternatives, such as Latin@, Latinx, and Latine. *See, e.g.*, *Village of Freeport v. Barrella*, 814 F.3d 594, 603-04, n.21 (2d Cir. 2016) (detailing the histories and uses of the terms "Hispanic" and "Latino"); *City of Oakland v. Wells Fargo & Co.*, 972 F.3d 1112, 1117 n.1 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, No. 19-15169, 2021 WL 1539960 (9th Cir. Apr. 20, 2021) (noting that its use of "Latino" is "also meant to include persons who identify as 'Latina,' 'Latinx,' or 'Hispanic'"); *Ponce v. People*, 72 V.I. 828, 2020 V.I. 2 (2020) (Swan, J., concurring, in part) (citing Ecleen Luzmila Caraballo, *This Comic Breaks Down Latinx v. Latine for Those Who Want to be Gender-inclusive*, REMEZCLA (Oct. 24, 2019) https://remezcla.com/culture/latinx-latine-comic/ (last visited Jan. 27, 2010) (using "Latine" as an alternative to "Latinx")).

place within a time-span of several months, sufficiently states a claim, based on circumstantial evidence, that she was terminated based on her Hispanic identity.

Defendants put forward evidence showing that Plaintiff Wolfe was dismissed due to the "unauthorized use of student information." ECF No. 11-2 ¶ 3. Specifically, Defendant Hyeonjeong states in an affidavit that Plaintiff Wolfe "had been contacting students and former students, whose contact information she obtained from internal college files, to ask inappropriate questions about a former student, a graduate of Columbia College's English as a Second Language program." *Id.* Therefore, Defendants argue there was a legitimate and nondiscriminatory basis for her termination.

Plaintiff Wolfe argues that additional discovery is necessary to investigate Defendants' purported basis for firing her. ECF No. 15 at 11. Specifically, she argues that she should have the opportunity to cross-examine the students she allegedly contacted inappropriately, to cross-examine Defendant Hyeonjeong about the allegations and determine whether she is credible, and to investigate the existence of other witnesses or documents with information about the reasons for Plaintiff Wolfe's termination. *Id.* at 12. The Court agrees. Defendants case currently rests on a single document—a termination letter—and an affidavit by an individual who is a defendant in this case and is alleged to have discriminated against Plaintiff Wolfe.[6] *See* ECF No. 11-2; ECF No. 11-3. It is reasonable to assume that additional witnesses and documents, as well as cross-examination of Defendant Hyeonjeong, may shed further light on the credibility of Defendants' purported basis for firing Plaintiff Wolfe, a material issue to Plaintiff Wolfe's disparate treatment

---

[6] Text messages sent from Defendant Hyeonjeong to Plaintiff Wolfe and attached to Plaintiffs' Opposition also state that Plaintiff Wolfe was terminated because she "used [the] school['s] name to find about personal information of a former student." ECF No. 15-1 at 6. However, those messages suffer from the same issue—they are statements made by a named defendant alleged to have discriminated against Plaintiff Wolfe and may (or may not) be disproved through discovery.

claim, and Plaintiff Wolfe should have the opportunity to discover that information. Accordingly, Defendants' Motion is denied with respect to Plaintiff's claim that she was terminated based on her Hispanic identity.

However, Plaintiff Wolfe's sex-based discrimination claim fails. Plaintiff Wolfe alleges that Defendant Bae, "without Wolfe's consent, grabbed Wolfe and shook her in a sexually suggestive manner," specifically "grab[bing] Wolfe from behind, without her consent, and rub[bing] her body against her backside." ECF No. 10 ¶ 29. While this fact will, as discussed *infra*, be relevant to Plaintiff Wolfe's hostile work environment claim, it does not alone give rise to a plausible case of sex-based discrimination, as it does not suggest a causal relationship between Plaintiff's sex and her termination. Accordingly, while Plaintiff's race- and national origin-based disparate treatment claims may proceed, her sex-based disparate treatment claim is dismissed.

### b. Hostile Work Environment

Title VII provides a cause of action to an employee when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted). To state a hostile work environment claim, a plaintiff must allege that the harassment was (1) unwelcome, (2) based on a protected characteristic, such as race, national origin, or religion, (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere, and (4) imputable to the defendant. *See EEOC. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009). Courts evaluating whether a complaint has stated a plausible hostile work environment claim must consider "the totality of the circumstances,

including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). Importantly, "Title VII does not establish a general civility code for the American workplace" and "complaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) (alterations in *Sunbelt Rentals*) (internal citations and quotation marks omitted).

Plaintiff Wolfe alleges that she was "subject to discriminatory severe or pervasive conduct by Defendants." ECF No. 10 ¶ 53. While the Amended Complaint never expressly alleges the basis of her claim, the factual allegations clearly suggest the claim is based on national origin, race, and sex. Plaintiff Wolfe alleges a pattern of behavior taking place over several months that ranged from fairly innocuous acts by Defendants—such as having to answer a call while on her lunch break, *id.* ¶ 25, or speaking in Korean around her, *id.* ¶ 27—to aggressive conduct—including grabbing and pulling Plaintiff Wolfe's hair, *id.* ¶ 24, squeezing her neck, *id.* ¶ 30, and hitting her in the ear, *id.* ¶ 25. Taken together, along with the allegations supporting the disparate treatment claim, the allegations of harassment are sufficiently severe and pervasive as to "create an abusive atmosphere." *Cent. Wholesalers, Inc.*, 573 F.3d at 175; *cf. White v. BFI Waste Servs., LLC*, 375 F.3d 288, 298 n.6 (4th Cir. 2004) ("The presence of race-based physical threats undeniably strengthens a hostile work environment claim."). They are not merely "some unpleasant interactions," as Defendants describe. ECF No. 11-1 at 17.

Combined with the discriminatory comments and behavior against Hispanic students and the Spanish language alleged by Plaintiffs, a reasonable inference may be drawn at this stage that the harassment was borne out of anti-Hispanic discrimination. *Cf. Short v. Berryhill*, No. CV ELH-18-2714, 2019 WL 4643806, at *17 (D. Md. Sept. 24, 2019) (finding the causal element was not satisfied where the plaintiff did not present facts linking harassment to the plaintiff's race, "such as racial epithets or derogatory language related to [the plaintiff] being African-American"). Thus, Plaintiff Wolfe has alleged a plausible case of hostile work environment on the basis of her Hispanic identity.

Plaintiff Wolfe has also alleged facts suggesting that the underlying basis for Defendants' behavior was related to the fact that Plaintiff Wolfe is a woman. Specifically, Plaintiff alleges an incident in which Defendant Bae, "without Wolfe's consent, grabbed Wolfe and shook her in a sexually suggestive manner," "grab[bing] Wolfe from behind, without her consent, and rubb[ing] her body against her backside." ECF No. 10 ¶ 29. Although this is an isolated event, given its severity, and drawing all reasonable inferences in Plaintiff Wolfe's favor, it nevertheless satisfies the third element of a hostile work environment claim at this stage. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) ("Importantly, however, an 'isolated incident[ ]' of harassment can 'amount to discriminatory changes in the terms and conditions of employment,' if that incident is 'extremely serious.'" (quoting *Faragher*, 524 U.S. at 788)) (alteration in *Boyer-Liberto*); *Jones v. Fam. Health Ctrs. of Balt., Inc.*, 135 F. Supp. 3d 372, 379 (D. Md. 2015) (finding isolated instances of unwanted sexual contact can render a workplace hostile). This conclusion is bolstered by the fact that Defendant Bae was Plaintiff Wolfe's

supervisor.[7] ECF No. 10 ¶ 16; *see Emond v. Corr. Med. Servs., Inc.*, No. JKB-10-1680, 2011 WL 2712749, at *7 (D. Md. July 12, 2011) ("The Fourth Circuit has held that a reasonable jury may find harassing behavior by a direct supervisor, who 'ha[s] significant authority over [the employee] on a day-to-day basis and the ability to influence the rest of [the employee's] career' to be objectively more severe than the same behavior by a 'fellow employee.'" (quoting *EEOC v. Fairbrook Medical Clinic*, 609 F.3d 320, 329 (4th Cir. 2010))) (alteration in *Emond*). The fact that this unwelcome behavior was motivated by sex-based discrimination can be inferred from the nature of the act. *See Davidson-Nadwodny v. Wal-Mart Assocs., Inc.*, No. CCB-07-2595, 2010 WL 1328572, at *4 (D. Md. Mar. 26, 2010) ("Although the sexual nature of the alleged conduct is, on its own, insufficient to prove that the harassment was based on sex, it is probative of the possibility that [the defendant's] conduct was motivated by sexual desire."). Thus, Plaintiff Wolfe has alleged a hostile work environment based on sex with respect to this event.

Defendants submit affidavits from both Defendant Bae and Defendant Hyeonjeong stating that they did not pull Plaintiff Wolfe's hair, inappropriately touch her, or otherwise physically harm her. *See* ECF No. 11-2 ¶ 5; ECF No. 11-4 ¶ 5. However, especially where discovery has not yet begun, these self-serving affidavits are insufficient to warrant summary judgment. *Cf. Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ("[W]e generally consider self-serving opinions without objective corroboration not significantly probative[.]"). Accordingly, Defendants' Motion is denied as to Plaintiff Wolfe's hostile work environment claims.

---

[7] Defendants state in their Motion that Defendant Bae's affidavit refutes this point, ECF No. 11-1 at 16, but while the affidavit states that she was not "personally involved with either the hiring or firing" of Plaintiff Wolfe, and that Defendant Hyeonjeong was both her and Plaintiff Wolfe's supervisor, it does not clearly refute the allegation that Defendant Bae also supervised Plaintiff Wolfe, *see* ECF No. 11-4 ¶ 2.

### c. Retaliation

Title VII makes it unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3. Employment practices made unlawful by Title VII are those that discriminate against employees on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e–2 (delineating unlawful employment practices under Title VII). To establish a *prima facie* claim of retaliation under Title VII, a plaintiff must demonstrate three elements: "(1) he engaged in a protected activity, (2) his employer acted adversely against him, and (3) the protected activity was causally connected to the adverse action." *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 789 (D. Md. 2013) (citing 42 U.S.C. § 2000e-3).

Regarding the first element, an employee has not engaged in "protected activity" for purposes of Title VII unless the employee has engaged in oppositional activity directed to "an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a).

To satisfy the second element of a retaliation claim, Plaintiff must point to actions that were "'materially adverse'— such that they 'might have dissuaded a reasonable worker' from engaging in protected activity." *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).[8] Title VII's antiretaliation provision thus "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N.*, 548 U.S. at 67; *see also Ray v. Int'l Paper Co.*, 909 F.3d 661, 667 (4th Cir. 2018). The Fourth Circuit has found that "discharge, demotion,

---

[8] Notably, while "adverse action" mirrors the "adverse employment action" requirement for discrimination claims, the Fourth Circuit has clarified that "adverse action" is broader in that it "need not be employment or workplace-related in order to sustain a retaliation claim." *Strothers*, 895 F.3d at 327; *see also Burlington N.*, 548 U.S. at 64 ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment.").

decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" are examples of adverse actions. *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). On the other hand, "[t]he anti-retaliation provision of Title VII does not protect against 'petty slights, minor annoyances, and simple lack of good manners.'" *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 738 (D. Md. 2009) (quoting *Burlington N.*, 548 U.S. at 68). Nor does "a personal conflict alone . . . constitute retaliation." *Spencer v. Va. State Univ.*, 919 F.3d 199, 208 (4th Cir. 2019).

To satisfy the third element, a plaintiff at trial must show that "the employer [took] the adverse employment action *because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original). Pursuant to the Supreme Court's ruling in *University of Texas Southwestern Medical Center v. Nassar*, "a plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." 570 U.S. 338, 362 (2013). In evaluating causation at the *prima facie* stage of the retaliation analysis, courts often consider: (1) whether the allegedly retaliatory actor was aware that the plaintiff had engaged in the protected activity at the time of the allegedly retaliatory act, and (2) the temporal proximity between the protected activity and the allegedly retaliatory act. *Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006) (holding that a plaintiff had not established a *prima facie* case of retaliation where he had not shown that the allegedly retaliatory actors were aware of his protected activity); *Dowe*, 145 F.3d at 657 (determining that a lengthy period of time between the employer becoming aware of the protected activity and the alleged adverse employment action negated any inference that a causal connection existed). In order for temporal proximity alone to satisfy the causation prong of the *prima facie* case, the temporal proximity must be very

close. *See Allen v. Rumsfeld*, 273 F. Supp. 2d 695, 707 (D. Md. 2003) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, (2001)).

The *McDonnell Douglas* framework applies to retaliation claims as well as discrimination claims. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015). Under that framework, after a plaintiff establishes a *prima facie* case of retaliatory discrimination, the burden then shifts to the employer "to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Id.* at 250. If the employer makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's purported non-retaliatory reasons "were not its true reasons, but were a pretext for discrimination." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (internal quotation marks and citations omitted).

According to the Amended Complaint, on November 5, 2019, Plaintiff Wolfe asked Defendant Hyeonjeong to speak with her about the discrimination and hostile work environment she had been experiencing, but Defendant Hyeonjeong refused. ECF No. 10 ¶ 32. She approached Defendant Bae about her concerns that same day, who told her, "if you go to HR, then you will see what [Defendant Hyeonjeong] is going to do to you." *Id.* ¶ 33.[9] The following day, November 6, 2019, Plaintiff Wolfe went to the Vienna, Virginia campus to discuss the discrimination and violent conduct she and her mother had experienced with an individual in Human Resources named Jinny Kim. *Id.* ¶ 42. Kim allegedly told Plaintiff Wolfe that she "knew

---

[9] In an affidavit filed with Plaintiffs' Opposition to Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment, Plaintiff Wolfe states that, "[a]t various times between August 2019 to November 2019, Susie routinely told me that if I were to report the abuse to Human Resources or senior officials in Vienna, Fairfax, I would have to face" Defendant Hyeonjeong. ECF No. 15-1 at 1. Additionally, in October 2019, Defendant Bae "used her finger and made a 'slashing throat' gesture towards" Plaintiff Wolfe as a threat to prevent her from reporting their conduct. *Id.* at 2.

everything." *Id.* Plaintiff Wolfe further shared her concerns with the College's vice president, who stated, "we know about the incident," and said he would set up a meeting with Plaintiff Wolfe, Defendant Hyeonjeong, and Jinny Kim. *Id.* ¶¶ 44–45. Reporting Defendants' allegedly unlawful and discriminatory conduct constitutes protected activities for the purposes of a retaliation claim. *See, e.g.*, *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 417 (D. Md. 2015).

Plaintiff Wolfe was then informed by email, also on November 6, 2019, that she had been terminated. ECF No. 10 ¶ 46. Termination counts as an adverse action. *Boone*, 178 F.3d 253, 255 (4th Cir. 1999). And, due to the proximity of her complaints on November 5 and 6 and her termination on November 6, as well as the fact that she was fired by an individual, Defendant Hyeonjeong, who was aware of her complaints, Plaintiff has sufficiently alleged a causal relationship between the two events. *See, e.g.*, *Allen*, 273 F. Supp. 2d at 707. Plaintiff Wolfe has therefore stated a *prima facie* retaliation claim.

In order to establish a legitimate basis for her termination, Defendants submit evidence showing that Plaintiff Wolfe was dismissed on November 4, 2019, not November 6, 2019, thus refuting the temporal connection between her complaints of discrimination and her termination. ECF No. 11-2 ¶ 2; ECF No. 11-3. However, in an affidavit filed with Plaintiffs' Opposition to Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment, Plaintiff Wolfe insists that she did not learn of her termination until November 6, 2019. ECF No. 15-1 at 2. Attached to the affidavit is an email from Defendant Hyeonjeong, sent at 12:47 pm on November 6, 2019, stating, "[a]s I gave you notice verbally on Monday, November 4th, I am giving you 2 week notice of job termination." ECF No. 15-1 at 5.

Based on these documents and affidavits, either (1) Plaintiff Wolfe was terminated on November 6, 2019, and Defendant Hyeonjeong attempted to cover her tracks by backdating the letter and referencing an earlier conversation; or (2) Plaintiff Wolfe was terminated on November 4, 2019, and she is misremembering or misstating the correct date in her Amended Complaint and Opposition. A motion for summary judgment, particularly one filed pre-discovery, is not the appropriate time to decide which individual's story is true. *See Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015). Accordingly, Defendants' Motion for Summary Judgment is denied with respect to Plaintiff Wolfe's retaliation claim.

### 2. State Law Claims

Plaintiff also brings various state law claims over which the Court exercises supplemental jurisdiction. As a preliminary matter, as a federal court exercising supplemental jurisdiction over Plaintiff Wolfe's state law claims, this Court must apply the forum state's choice-of-law rules. *See Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996). For tort claims, Maryland adheres to the First Restatement of Conflict of Laws rule, *lex loci delicti*, or the law of the place of the harm, to determine the applicable substantive law. *See Naughton v. Bankier*, 114 Md. App. 641, 691, A.2d 712, 716 (1997). Under that rule, the court applies the law of the state "where the injury-the last event required to constitute the tort-occurred." *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 615, 911 A.2d 841, 845 (2006). The events at issue here took place in Maryland. Thus, Maryland law applies to the state causes of action.

### a. Wrongful Discharge

Plaintiff Wolfe alleges Defendants wrongfully discharged her after she reported "illegal or violent acts of assault and battery at her workplace by another employee to upper management." ECF No. 10 ¶ 59. In order to establish a claim for wrongful discharge under

Maryland law, a plaintiff must show that: "the employee [was] discharged, the basis for the employee's discharge [violated] some clear mandate of public policy, and there [is] a nexus between the employee's conduct and the employer's decision to fire the employee." *Wholey v. Sears Roebuck*, 370 Md. 38, 50–51, 803 A.2d 482, 489 (2002).

Plaintiff Wolfe has clearly alleged that she was discharged. ECF No. 10 ¶ 46. She further alleges that the basis for her discharge—reporting an assault and battery by a coworker to the police, *see id.* ¶ 45—violates public policy. *See id.* ¶ 59; *see also Wholey*, 370 Md. at 62 ("To qualify for the public policy exception to at-will employment, the employee must report the suspected criminal activity to the appropriate law enforcement or judicial official, not merely investigate suspected wrong-doing and discuss that investigation with co-employees or supervisors."). To establish the nexus between the two, Plaintiff Wolfe, as with her retaliation claim, relies on the temporal proximity between her reporting the assault and battery on November 6, 2019, and her termination the same day. *See* ECF No. 10 ¶ 43–46; *see also* ECF No. 15 at 18. Based on these allegations, Plaintiff Wolfe has sufficiently stated a wrongful discharge claim.

In response, Defendants raise the same argument that they did with respect to Plaintiff Wolfe's retaliation claim: that because she was actually terminated on November 4, 2019, she cannot establish that she was terminated for reporting the assault and battery against her mother two days later. *See* ECF No. 11-1 at 19. For the reasons discussed above, *see supra*, Section III.B.1.c, this argument fails. There is a genuine dispute of material fact regarding the date of Plaintiff Wolfe's termination, precluding summary judgment. Accordingly, Defendants' Motion is denied with respect to Plaintiff Wolfe's wrongful discharge claim.

### b. Battery

Plaintiff Wolfe next alleges that "Defendant's agents or employees committed an unlawful touching without the consent of Plaintiff, which constitutes a claim for battery." ECF No. 10 ¶ 63. Under Maryland law, a battery occurs when one intends a harmful or offensive contact with another without that person's consent. *Nelson v. Carroll*, 355 Md. 593, 600, 735 A.2d 1096, 1099 (1999). A battery may occur through a defendant's direct or indirect contact with the plaintiff. *Id.* at 1100. However, intent is required; mere accidental or inadvertent conduct that results in harmful contact with another does not rise to the level of assault or battery. *Id.* at 1101.

Defendants argue Plaintiff Wolfe's allegations are overly vague, leaving Defendants and the Court to "fill in the blanks" of Plaintiff's claim. ECF No. 11-1 at 20. It is true that Plaintiff Wolfe does not identify instances of alleged battery in the section of the Amended Complaint addressing that claim, and instead merely recites the elements of a battery claim. *See* ECF No. 10 ¶ 63. However, elsewhere in the Amended Complaint, Plaintiff Wolfe alleges that Defendant Hyeonjeong grabbed and pulled Plaintiff Wolfe's hair, *id.* ¶ 24; that Defendant Bae squeezed her neck while Plaintiff was working at a computer, *id.* ¶ 30; and that Defendant Hyeonjeong hit her in the ear, *id.* ¶ 25. Plaintiff further alleges that Defendant Bae, "without Wolfe's consent, grabbed Wolfe and shook her in a sexually suggestive manner," specifically "grab[bing] Wolfe from behind, without her consent, and rubb[ing] her body against her backside." *Id.* ¶ 29. While the Amended Complaint indeed burdens the Court with fishing through the facts to connect them with Plaintiff Wolfe's legal claims, these specific allegations adequately "fill in the blanks" of Plaintiff Wolfe's battery claim. Plaintiff Wolfe has thus met the pleading standard for battery, having alleged instances of nonconsensual contact that were harmful or offensive. However,

Defendants are correct that Plaintiff Wolfe cannot allege battery against one defendant based on another's conduct—Plaintiff Wolfe is therefore understood to be alleging battery against Defendant Hyeonjeong for pulling her hair and hitting her ear, and against Defendant Bae for squeezing her neck and grabbing her and rubbing against her from behind.

To the extent Defendants argue for summary judgment on these claims based on Defendant Hyeonjeong's and Defendant Bae's affidavits, which deny the allegations, that argument fails for the reasons described above. *See supra*, Section III.B.1.b. Accordingly, Defendants' Motion to Dismiss or for Summary Judgment on Plaintiff's battery claim is denied.

### c. Assault

Plaintiff Wolfe further alleges that she was assaulted by Defendants Bae and Hyeonjeong. ECF No. 10 ¶ 67. Maryland law defines assault as an "attempt to cause a harmful or offensive contact with another or to cause an apprehension of such contact." *Miles v. DaVita Rx, LLC*, 962 F. Supp. 2d 825, 834 (D. Md. 2013) (citing *Wallace v. Poulos*, 861 F. Supp. 2d 587, 596 n.9 (D. Md. 2012)); *see also Lamb v. State*, 93 Md. App. 422, 427, 613 A.2d 402, 404–420 (1992) (providing a thorough description of assault and battery under Maryland law). The tort thus consists of two basic elements: a threat by a defendant who possessed the apparent present ability to carry out that threat, measured by a standard of reasonableness; and (ii) apprehension of imminent bodily harm, measured by a subjective standard. *See Lee v. Pfeifer*, 916 F. Supp. 501, 505 (D. Md. 1996) (citing Paul M. Sandler and James K. Archibald, *Pleading Causes of Action in Maryland*, 79–80 (1991); *Continental Casualty Co. v. Mirabile*, 52 Md. App. 387, 398, 449 A.2d 1176, 1183 (1982)).

As with Plaintiff Wolfe's battery claim, the Amended Complaint does not clearly connect its stated claim of assault to the facts underlying it. In Plaintiffs' Opposition, Plaintiff Wolfe

points to Defendant Hyeonjeong's "throat-slashing gesture" as the foundation for this claim, described in Plaintiff's affidavit accompanying the Opposition. *See* ECF No. 15 at 20; ECF No. 15-1 ¶ 4 ("In October 2019, Susie used her finger and made a 'slashing throat' gesture towards me. She did this to intimidate me and prevent me from telling Joanna about the abuse I was facing at work.").[10]

Plaintiff Wolfe alleges that Defendant Hyeonjeong made a "throat-slashing gesture" to threaten her and prevent her from reporting the discrimination and harassment she was facing. ECF No. 15-1 ¶ 4. However, Maryland law requires that the plaintiff have an apprehension of *imminent* or *immediate* harm. *See Laronde v. Lopez*, No. 2559, Sept. Term, 2018, 2020 WL 550674, at *6 (Md. Ct. Spec. App. Feb. 3, 2020), *cert. denied*, 468 Md. 552, 228 A.3d 167 (2020) (citing *Snyder v. State*, 210 Md. App. 370, 382 (2013)) (recognizing that in the assault context, Maryland law used "imminent" and "immediate" interchangeably) (emphasis added). Fear of future or conditional harm does not support a claim of assault. *Cf. Hill v. State*, 134 Md. App. 327, 356, 759 A.2d 1164, 1179 (2000) (affirming assault conviction involving a verbal threat to kill a university instructor if the appellant was not given an "A" in his class, "even though the words that appellant used constituted a threat of harm to occur conditionally and in the future," because those words were accompanied by appellant also displaying a gun and explaining how he would dispose of the instructor's body, causing the instructor to "fear for [his]

---

[10] This allegation did not appear in the Amended Complaint, and plaintiffs may not amend their pleadings through oppositions to Motions to Dismiss. *See Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991). Nevertheless, in the interest of judicial economy, and to avoid another round of briefing in which Plaintiffs file a Motion for Leave to Amend, the Court will proceed to evaluate the allegation contained in Plaintiff Wolfe's affidavit.

life immediately" and to fear he would be shot at that time).[11]  Because Plaintiff Wolfe does not

allege that she was afraid Defendant Hyeonjeong would harm her imminently or immediately,

she has failed to state a claim for assault based on the throat-slashing gesture, and this claim will

be dismissed.

### d.  MWPCA Violation

Plaintiff Wolfe alleges that Defendants failed to pay her all wages earned and owed for

work that she performed in violation of the Maryland Wage Payment and Collection Act

("MWPCA"). ECF No. 10 ¶ 72. She specifically alleges that Defendant Columbia College still

owes her between $500 and $1,000. *Id.* ¶ 48. The MWPCA requires employers, upon the

termination of an employee's employment, to pay that employee "all wages due for work that the

employee performed before the date of termination of employment." *See* Md. Code Ann., Lab. &

Empl. § 3–505. The MWPCA defines "wage" as all compensation that is due to an employee for

employment. *See* § 3–501(c). Wage includes a bonus, commission, fringe benefit, or any other

remuneration promised for service. *See id.* It is the exchange of remuneration for the employee's

work that is crucial to the determination that compensation constitutes a wage. *Whiting–Turner*

*Cont. Co. v. Fitzpatrick*, 366 Md. 295, 303, 783 A.2d 667, 671 (2001).

Defendants appear to concede that Plaintiff was owed wages earned during her

employment but dispute the fact that Plaintiff Wolfe was not paid. ECF No. 11; ECF No. 16 at 7.

Defendant Hyeonjeong states in her affidavit that she personally delivered the check. ECF No.

11-2 ¶ 7.[12] Defendants state in their Reply that, "[a]fter this case was commenced, Defendants

---

[11] It was noted in *Kellum v. State*, 223 Md. 80, 85, 162 A.2d 473, 476 (1960), that in Maryland, assault "has substantially (if not exactly) the same meaning in our law of torts as in our criminal law."

[12] Indeed, text messages between Defendant Hyeonjeong and Plaintiff Wolfe, included with Plaintiffs' Opposition, includes a picture appearing to show the check in Plaintiff Wolfe's mailbox. ECF No. 15-1 at 13.

transmitted another check to the Plaintiff by certified mail," and that, if this check is not received, Defendants will tender the check through counsel to Plaintiff's counsel. ECF No. 16 at 7. With the understanding that this issue is undisputed, and hopefully resolved at this time, the Court will dismiss this claim without prejudice. If Plaintiff does not receive the payment due, she may revive it.

### e. IIED

Finally, Plaintiff Wolfe brings an intentional infliction of emotional distress ("IIED") claim against Defendants. ECF No. 10 ¶¶ 75–76. To state a claim for IIED under Maryland law, Plaintiff must allege that: "(1) the defendant's conduct was intentional or reckless; (2) [the] conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress suffered; and (4) the emotional distress was severe." *Borchers v. Hyrchuk*, 126 Md. App. 10, 18, 727 A.2d 388, 392 (1999) (citing *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611, 614 (1977)). In Maryland, an IIED claim is "rarely viable," *id.*, and courts have imposed "liability sparingly and . . . limited the tort to situations where the 'wounds are truly severe and incapable of healing themselves,'" *Lee v. Queen Anne's Cnty. Off. of Sheriff*, No. RDB-13-672, 2014 WL 476233, at *16 (D. Md. Feb. 5, 2014) (quoting *McDaniel v. Maryland*, No. RDB-10-00189, 2010 WL 3260007, at *9 (D. Md. Aug. 18, 2010)). Indeed, in the first thirty years after the Maryland "Court of Appeals recognized the tort of IIED, it [] upheld such claims only four times." *Lasater v. Guttmann*, 194 Md. App. 431, 449, 5 A.3d 79, 90 (2010).

Specifically, to adequately plead the second element of an IIED claim, the plaintiff must allege that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community." *Washington v. Maynard*, No. GLR-13-3767, 2016 WL 865359, at *11 (D. Md. Mar. 7, 2016) (citing *Harris*, 380 A.2d at 614). "The conduct must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 60, 502 A.2d 1057, 1064 (1986).

Here, Plaintiff Wolfe alleges that Defendant Bae stabbed Plaintiff Wolfe's mother, Plaintiff Maya, with a pen in front of her. ECF No. 10 ¶ 39. While this was doubtlessly indecent behavior, it does not rise to the level of outrageous conduct required to sufficiently plead an IIED claim.

Moreover, Plaintiff does not allege facts that "if true, would rise to the level of severe emotional distress." *Simmons v. Bank of Am., N.A.*, No. PJM-13-0733, 2014 WL 509386, at *5 (D. Md. Feb. 6, 2014). The "distress [must be] so severe that 'no reasonable man could be expected to endure it.'" *Thacker v. City of Hyattsville*, 135 Md. App. 268, 315 (Md. Ct. Spec. App. 2000) (quoting *Harris*, 380 A.2d at 616). A plaintiff meets this threshold when her "emotional distress is so severe as to have disrupted her ability to function on a daily basis." *Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007) (quoting *Bryant v. Better Bus. Bureau of Greater Md.*, 923 F. Supp. 720, 750 (D. Md. 1996)); *see also Hamilton*, 66 Md. App. at 59–60 (finding the conduct must strike "to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung"). Additionally, the allegations of the emotional impact must be specific, outlining "with reasonable certainty the nature, intensity or duration of the alleged emotional injury." *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 370, 758 A.2d 95, 115 (2000) (dismissing claim where the plaintiff alleged that she sought "medical treatment" but did not "state whether the medical treatment that she was forced to seek was of a psychological

or physical nature, how long the treatment lasted, whether it was successful or is still continuing, whether it was periodic or intensive, and so forth"). Plaintiff Wolfe alleges that she "had to undergo treatment for emotional distress" as a result of the assault on her mother, ECF No. 10 ¶ 41, but this general allegation does not meet the high bar for pleading severe emotional distress. Because Plaintiff Wolfe fails to allege the second and fourth elements of her IIED claim, it is dismissed.

## III.    MOTION TO DISMISS PLAINTIFF MAYA'S CLAIMS

### A.  Standard of Review

Defendants move to dismiss Plaintiff Maya's claims for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. 13 at 1. A motion pursuant to Rule 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty.* 523 F.3d 453, 459 (4th Cir. 2008). When considering a Rule 12(b)(1) motion, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

### B.  Discussion

Plaintiff Maya's claims standing alone do not establish subject-matter jurisdiction because the parties are not diverse, and her claims do not present a federal question. *See* 28 U.S.C. § 1332; 28 U.S.C. § 1331. However, "in any civil action of which the district courts have

original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). State and federal claims "form part of the same case or controversy" where they "'derive from a common nucleus of operative fact.'" *Shavitz v. Guilford Cnty. Bd. of Educ.*, 100 F. App'x 146, 150 (4th Cir. 2004) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966))). Supplemental jurisdiction can include claims brought by additional parties. *See, e.g.*, *Amato v. KPMG LLP*, 433 F. Supp. 2d 460, 490 (M.D. Pa. 2006), *order vacated in part on reconsideration on other grounds*, No. 06CV39, 2006 WL 2376245 (M.D. Pa. Aug. 14, 2006) ("[T]his Court has held that supplemental jurisdiction applies not only to claims brought by a single plaintiff, but also where different plaintiffs' claims "derive from a 'common nucleus of operative fact' and are such that a plaintiff 'would ordinarily be expected to try them in one judicial proceeding.'" (quoting *Arnold v. Kimberly Quality Care Nursing Serv.*, 762 F. Supp. 1182, 1186 (M.D. Pa. 1991)).

Here, Plaintiff Wolfe has asserted claims arising under Title VII; thus, the Court must determine whether Plaintiff Maya's claims are indeed part of the same case or controversy.

Defendants argue that the only points of overlap between Plaintiff Wolfe's and Plaintiff Maya's claims are the setting, Columbia College, and the alleged attacker, Defendant Bae. ECF No. 16 at 2. While these are, indeed, common elements, they are not the only ones. Plaintiff Wolfe alleges a pattern of anti-Hispanic discrimination and physical harassment by Defendants Hyeonjeong and Bae culminating in Defendant Bae stabbing her mother, a Hispanic woman, with a pen on November 5, 2019. When she finally reported their behavior in the wake of this event, she was terminated on November 6, 2019. Plaintiff Wolfe and Plaintiff Maya have distinct relationships to this sequence of events—Plaintiff Maya was the victim of the alleged assault and

battery, while for Plaintiff Wolfe, it was the latest development in a pattern of inappropriate behavior by Defendants Hyeonjeong and Bae—but their claims each stem from the same "common nucleus of operative fact." *See White v. County of Newberry*, 985 F.2d 168, 172 (4th Cir. 1993) (finding supplemental claims "need only revolve around a central fact pattern" shared with the federal claim). Accordingly, the Court will exercise supplemental jurisdiction over Plaintiff Maya's state law claims in the interests of judicial economy as well as convenience and fairness to the parties. *See Elyazidi v. SunTrust Bank,* No. DKC-13-2204, 2014 WL 824129, at *7 (D. Md. Feb. 28, 2014), *aff'd*, 780 F.3d 227 (4th Cir. 2015)) ("In deciding whether to exercise discretion to consider supplemental claims, courts generally look to factors such as the 'convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy.'" (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995))); *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, (1997) ("Depending on a host of factors, then—including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims—district courts may decline to exercise jurisdiction over supplemental state law claims.").

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion is granted, in part, and denied, in part. A separate Order follows.


Date: July 6, 2021                                  /s/
                                          GEORGE J. HAZEL
                                          United States District Judge