**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| KELLY WOLFE, et al., | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 20-1246-AAQ |
| | * | |
| COLUMBIA COLLEGE, et al., | * | |
| Defendants. | * | |

\*\*\*\*\*\*

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a case involving claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e, *et seq.* ("Title VII"), as well as several state law claims, including wrongful discharge,

battery, negligent supervision, and false imprisonment.  Following a four-day jury trial in this

case, the jury returned a verdict in favor of Plaintiff Kelly Wolfe on her Title VII retaliation claim

and her state law wrongful discharge claim, and for Plaintiff Odilia Maya on her state law battery,

false imprisonment, and negligent supervision claims.   ECF No. 102.   Pending before the Court

is Defendants Columbia College, Inc., Susie Bae, and Hyeonjeong "Joanna" Ok's Motion for

Judgment as a Matter of Law or in the Alternative, Motion for a New Trial.   ECF No. 108-1.   The

Motion has been fully briefed, and a hearing is not necessary under this Court's Local Rules.   *See*

Loc. R. 105.6 (D. Md. 2023).   While Defendants' Motion raises legitimate concerns regarding the

scope of relief the jury awarded, the Motion fails in so far as it selectively recaps the course of

proceedings in the case and asks the Court to usurp the role of the jury by reweighing the facts in

1

its favor.   For this reason and the reasons stated below, Defendants' Motion will be granted, in part, and denied, in part.

## BACKGROUND

### I.    Pre-Trial Proceedings

Plaintiff Wolfe filed a Charge of Discrimination against Columbia College with the U.S. Equal Employment Opportunity Commission on January 23, 2020, and subsequently received a notice of right to sue.   ECF No. 57-1, at 159, 163.   On May 19, 2020, Plaintiff Wolfe filed an initial Complaint in this Court.   ECF No. 1.   Defendants filed an initial Motion to Dismiss alleging Plaintiffs' failure to state a claim on July 22, 2020, ECF No. 7; in response, on August 17, 2020, Plaintiff Wolfe filed an Amended Complaint, adding Plaintiff Maya as a plaintiff, ECF No. 10.   In the Amended Complaint, Plaintiff Wolfe brought claims for disparate treatment, hostile work environment, and retaliation under Title VII, as well as state law claims for wrongful discharge, battery, assault, intentional infliction of emotional distress ("IIED"), and violation of the Maryland Wage Payment and Collection Act ("MWPCA").   ECF No. 10, at 6–10.   Plaintiff Maya advanced state law claims for battery, negligent supervision and retention, false imprisonment, and IIED.   *Id.* at 10–12.   On September 1, 2020, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 11, to which Plaintiffs filed a Response in Opposition on September 30, 2020, ECF No. 15, and Defendants filed a Reply on October 12, 2020, ECF No. 16.

On July 6, 2021, the Court granted, in part, and denied, in part, Defendants' Motion to Dismiss.   ECF Nos. 21, 22.   Specifically, the Court dismissed Plaintiff Wolfe's claims for sex-based disparate treatment, assault, IIED, and violation of the MWPCA.   ECF No. 21, at 17, 30–31, 33.   The Court also ruled that it would exercise supplemental jurisdiction over Plaintiff

Maya's claims. *Id.* at 35. Defendants filed an Answer to Plaintiffs' Amended Complaint on August 2, 2021. ECF No. 26. After an unsuccessful attempt at settlement, ECF No. 33, at 1, the parties notified the Court that they had substantially completed discovery, ECF No. 50, at 1. On September 9, 2022, Defendants filed a Motion for Summary Judgment. ECF No. 52. Plaintiffs filed a Response in Opposition to Defendants' Motion for Summary Judgment on October 25, 2022, ECF No. 57, to which Defendants replied on October 27, 2022, ECF No. 58. On March 7, 2023, the parties consented to the undersigned's chambers conducting all further proceedings in this case. ECF No. 63. On September 29, 2023, the Court granted Defendants' Motion for Summary Judgment, in part, dismissing Plaintiff Wolfe's disparate treatment claim and Plaintiff Maya's claim for intentional infliction of emotional distress. ECF No. 64.

On April 23, 2024, the Court held a Scheduling Conference in the case to set a schedule for trial and all pre-trial filings. ECF No. 77. After consulting with the parties regarding their availability, the Court ordered: (1) trial to proceed from September 30 through October 4, 2024; (2) that the parties submit all pre-trial filings, including proposed jury instructions, on or before September 6, 2024; and (3) that a pre-trial conference would be held on September 16, 2024. ECF No. 78. On July 9, 2024, the parties submitted a joint request to the Court to delay trial and all associated deadlines by approximately one month. Accordingly, on July 11, 2024, the Court rescheduled trial to occur from November 4 through November 8, 2024. ECF No. 80. Additionally, the Court ordered that the parties submit all pre-trial filings, including jury instructions, on or before October 11, 2024, and appear for a pre-trial conference on October 21, 2024. *Id*. Regarding their pre-trial filings specifically, the Court directed the parties to meet and confer as to whether they could reach agreement on proposed jury instructions. If they could not agree, the parties were instructed to submit separate proposed instructions, which the Court would

consider in formulating the final instructions.   On October 11, 2024, Defendants submitted a proposed lists of jury instructions, ECF No. 81, while Plaintiffs failed to comply with the Court's order.

On October 21, 2024, the parties appeared for what ultimately became the first of two Pre-Trial Conferences.   ECF No. 85.   During the conference, the Court resolved multiple evidentiary disputes between the parties, while deferring ruling on other disputes until Plaintiffs had provided the evidence in dispute and additional briefing for the Court to review.   The Court scheduled a second Pre-Trial Conference to address these evidentiary issues.   Towards the close of the hearing, Plaintiffs requested leave to submit their proposed jury instructions in advance of the Second Pre-Trial Conference.   Before granting such leave, the Court sought Plaintiffs' position on Defendants' instructions, as proposed.   Although Plaintiffs were not prepared to provide their position on each of Defendants' proposed instructions, Plaintiffs immediately objected to Defendants' proposed "at-will" instruction which read:

> When the employment is not for a definite duration, an employee can be discharged at any time, for any reason or no reason, just as an employee can quit work at any time without penalty. This general rule is subject to an exception when the employee's discharge violates some clearly expressed public policy.

ECF No. 81, at 44.   Plaintiffs asserted that the instruction was highly prejudicial in light of its potential to confuse the jury.   As the Court granted them leave to do, Plaintiffs filed their own set of proposed jury instructions on October 28, 2024.   ECF No. 89.

On October 29, 2024, the Court held the Second and Final Pre-Trial Conference in the case.[1]   ECF No. 90.   The majority of the Conference was devoted to resolving the evidentiary

---

[1] Defendants' "Procedural and Factual Background" inaccurately characterizes the events during the Final Pre-Trial Conference on October 29, 2024.   Defendants generally assert that during the Final Pre-Trial Conference on "October 28, 2024," the "Court noted it would review both parties'

disputes between the parties as to what materials could be presented at trial.  As to the jury instructions, the Court opened by reminding the parties that they had failed to comply with the Court's directive to meet and confer as to the differences between their proposed instructions. Accordingly, while the Court would attempt to resolve any inconsistences between the dueling sets of instructions, it would be the parties' responsibility to raise any objections to the other party's set of instructions.   The Court reminded the parties that if a party failed to object, their objection to the other party's instruction would be waived.[2]

The Court then explicitly asked both parties if there were any instructions that the other party had put forward to which they objected.   Plaintiffs indicated that while they believed, as a general matter, that their instructions read better, they only objected to Defendants' instructions regarding the substantive claims at issue in the case, believing that Plaintiffs' Instructions 24-43 more accurately represented the law.   Additionally, Plaintiffs objected to Defendants' at-will instruction quoted above, alleging that it was contrary to law and likely to confuse the jury in light of the fact that the jury may believe that Defendants could have terminated Plaintiff Wolfe in violation of Title VII.   Plaintiffs later expanded on this point, explaining that under the traditional *McDonnell Douglas* test, a defendant must put forward a legitimate reason for a termination once

---

filings but did not definitively say which instructions it would provide to the jury."   ECF No. 108-1, at 3-4.  *See also* ECF No. 108-1, at 6 (alleging, inaccurately, "[p]rior to instructing the jury, the Court did not issue any notice to the parties as to what instructions would be given, nor did it provide them the opportunity to review them during trial.").   As discussed *infra*, and as reflected on the docket, the Court, consistent with its representations to the parties during the Final Pre-Trial Conference, on November 2, 2024, issued an Order stating which instructions it would use.   *See* ECF No. 92.   Additionally, on the First Day of Trial, the Court explained its reasoning for sustaining both Plaintiffs' and Defendants' separate objections.

[2] Separately, Defendants concede they had no objections to Plaintiffs' proposed verdict sheet.

a plaintiff has met its prima facie burden.  The at-will instruction would, in essence, negate a defendant's burden at step two.

Defendants, in response, countered that it was necessary to include the at-will instruction because the jury needed to understand that Defendants could have terminated Plaintiff Wolfe, even without cause, so long as they did not base their decision on one of the protected classifications in Title VII or in violation of public policy.  Additionally, Defendants objected to Plaintiffs' Proposed Instruction No. 37, stating that Defendants owed Plaintiff Maya a special duty because she was a student.  As to Plaintiffs' objection to Defendants' substantive instructions, Defendants conceded that Plaintiffs' proposed instructions did not misstate the law, but preferred their version given that they came from a source regularly used in this Court, as opposed to Plaintiffs' having drafted them.

The Court ultimately reserved ruling on Plaintiffs' Proposed Instruction No. 37 concerning a special duty owed to students, Defendants' at-will instruction, and which set of substantive instructions to use.  However, the Court made clear that before trial commenced, it would issue an Order with the final list of jury instructions and give the parties the chance to preserve any objections to the final list of instructions.

On November 2, 2024, the Court issued an Order resolving these disputes and listing the specific instructions it would use.[3]  *See* ECF No. 92.  In summary, the Court sustained both Defendants' objection to Plaintiffs' Instruction No. 37 and Plaintiffs' objection to Defendants' proposed at-will instruction, and used a combination of both Defendants' and Plaintiffs' substantive instructions.

---

[3] On the same day, the Court issued an Order regarding the proposed *voir dire*.  ECF No. 91. The Court addressed the Order on the first day of trial; neither party raised any objections to the Order and, thus, the Order is not at issue in the present Motion.

On November 4, 2024—the first day of trial—before jury selection commenced, the Court referenced those Orders and explained its reasoning for both decisions.   The Court again explained to the parties that this would conclude the discussion regarding jury instructions, and having heard from the parties extensively on the matter, a separate pre-charge conference would not be held to re-argue and re-decide any issues that had been previously addressed.   Accordingly, if the parties wanted to preserve any objections to the final jury instructions, they should do so at that time.   Regarding Plaintiffs' Proposed Instruction No. 37, the Court explained that this Court had previously addressed the issue, finding that the *in loco parentis* standard did not apply to collegiate students.   Plaintiffs objected to the Court's exclusion of the instruction.   Regarding Defendants' proposed at-will instruction, the Court began by noting that neither party had provided any authority in support of its position.    Nonetheless, the Court had found no controlling authority from this Court, but had found unpublished decisions from other courts concluding that inclusion or exclusion of an at-will instruction did not constitute reversible error.   The Court cited the decisions and discussed their reasoning in some detail.   The Court then gave Defendants the opportunity to maintain their objection, present any additional argument, or reserve argument until the presentation of evidence had been completed.   Defendants respectfully chose to maintain their objection.

## II.    Facts as Presented at Trial

A four-day jury trial began on November 4, 2024.   Plaintiffs called four witnesses: Plaintiff Wolfe, Plaintiff Maya, Defendant Bae, and Defendant Ok.   Defendants called five witnesses: Ana Maria Flannery, a Columbia College employee who worked with Defendants Ok and Bae; John Kim, the vice president of Columbia College; Dr. Richard Kim, the president and founder of Columbia College; Defendant Ok; and Defendant Bae.

7

Plaintiff Wolfe worked as an Admissions Representative at Defendant Columbia College from May to November of 2019.  Her duties included new student recruitment and enrollment and offering support to the College's Spanish-speaking students.  Defendant Bae also worked at Columbia College as an Admissions Representative.  Defendant Ok, the Director of Columbia College's Silver Spring campus, supervised both Defendant Bae and Plaintiff Wolfe.  Plaintiff Maya—who is Plaintiff Wolfe's mother—was enrolled as a student in Columbia College's English as a second language program when the events giving rise to Plaintiffs' claims occurred.

### A.  Workplace Environment

At trial, Plaintiff Wolfe testified that she was subject to "harassment" and a "traumatic" work environment throughout the duration of her employment at Columbia College.  Specifically, Plaintiff Wolfe testified to incidents of verbal harassment, exclusion from meetings, and unwanted and aggressive physical contact.  For Defendants' part, both Defendant Bae and Defendant Ok denied that any of the incidents Plaintiff Wolfe described occurred.  Plaintiff Wolfe also testified that she complained to Defendant Bae about the constant discriminatory harassment and asked Defendant Ok to meet about the ongoing harassment several times, though Defendant Ok continually ignored the requests.  Defendants Bae and Ok again denied that Plaintiff Wolfe ever raised such complaints.

Defendant Ok also testified to the "extremely" close relationship that she had with Defendant Bae, noting that she would "do anything" for Defendant Bae, and stating that they talked every day, sometimes on the phone, about both work and personal matters.

### B.  November 5, 2019, Incident

On November 5, 2019, an incident occurred in the admissions office of the Columbia College Silver Spring campus.  Plaintiffs Maya and Wolfe testified that Defendant Bae grabbed Plaintiff Maya's arm, attempted to force her to sign a form, stabbed her in the arm with the pen,

followed her as she tried to leave, and tried to prevent her from leaving.   Plaintiff Maya also stated that she fell and injured her knee when she attempted to distance herself from Defendant Bae. Plaintiffs further testified that the incident caused Plaintiff Maya to experience heart palpitations so severe that she feared for her life and, as a result, sought emergency care at a local hospital. Defendants conceded that Plaintiff Maya and Defendant Bae had disagreed about signing a withdrawal form and that, during their discussion, Defendant Bae grew angry.   Defendants, however, denied that Defendant Bae ever grabbed or stabbed Plaintiff Maya.

Following the incident at the College on November 5, 2019, Plaintiff Wolfe took Plaintiff Maya to the hospital to address her cardiac symptoms.   While there, Plaintiffs called the police and reported Defendant Bae's behavior.   Plaintiff Wolfe testified that the next morning, November 6, 2019, she went to Columbia College's main campus in an attempt to speak with the College president, Dr. Kim, about the incident.   Though she did not speak to Dr. Kim, Plaintiff Wolfe testified that she told other Columbia College staff about the incident and that she had contacted the police.

### C. Plaintiff Wolfe's Termination

Both parties agree that Defendant Ok terminated Plaintiff Wolfe.   However, at trial, the parties presented different descriptions of the timing and circumstances surrounding the termination.

Defendant Ok testified that Plaintiff Wolfe had inappropriately used confidential school information to contact a former student for personal reasons.   Specifically, Defendant Ok stated that Plaintiff Wolfe used school information to email a former student, Raquel, to ask personal questions about a second former student, Leyla.   Defendant Ok further testified that, after learning of Plaintiff Wolfe's alleged misconduct on Friday, November 1, 2019, she spoke to Dr. Kim about terminating Plaintiff Wolfe on Monday, November 4, 2019.   After receiving authorization from

Dr. Kim, Defendant Ok testified that she gave Plaintiff Wolfe verbal notice of her termination later that same day.  Defendant Ok sent Plaintiff Wolfe an email confirming her termination in the afternoon on November 6, 2019.

Plaintiff Wolfe denied ever learning of her termination prior to the November 6 email. Plaintiff Wolfe further testified that her outreach to Raquel was within her job responsibilities, as she was investigating an alleged bullying incident that a current student brought to her attention. Throughout the trial, Plaintiff Wolfe maintained that she was not fired for the reasons Defendant Ok described but, rather, because she complained about discrimination and filed a police report following the November 5 incident.

### III.    Jury Verdict

On November 7, 2024, the jury returned its verdict.  The jury found for Defendants on Plaintiff Wolfe's hostile work environment and battery claims.   The jury found for Plaintiff Wolfe on her Title VII retaliation claim against Columbia College, awarding $1,000 in compensatory damages and $14,000 in back pay, and on her wrongful discharge claim against Columbia College, awarding $160,000 in compensatory damages and $75,000 in punitive damages.  As to Plaintiff Maya's claims, the jury found for Plaintiff Maya on her battery and false imprisonment claims against Defendant Bae, awarding $0 in compensatory damages and $500 in punitive damages on both claims.  Lastly, the jury found for Plaintiff Maya on her negligent supervision claim against Columbia College, awarding $49,000 in compensatory damages and $200,000 in punitive damages.  ECF No. 102.  The Court entered the judgment on November 14, 2024.  ECF No. 105.

### IV.    Pre- and Post-Verdict Motions

At the close of Plaintiffs' case, Defendants raised a partial Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(a).  Specifically, Defendants moved for

Judgment as a Matter of Law as to Plaintiffs' wrongful discharge and Title VII retaliation claims. For both claims, Defendants argued that Plaintiffs did not present sufficient evidence for a jury to reasonably find in their favor as a matter of law.   As to the wrongful discharge claim, Defendants argued that there was no evidence presented that any Columbia College decisionmaker had knowledge that Plaintiff Wolfe had reported the November 5, 2019, incident to police prior to her termination on November 6, 2019.   Regarding the Title VII retaliation claim, Defense counsel argued that Defendants had described a legitimate, nondiscriminatory reason for firing Plaintiff Wolfe, and that Plaintiff Wolfe had not shown that Defendants' stated reason was pretext or that discriminatory retaliation was the actual reason for Plaintiff Wolfe's termination.   The Court denied Defendants' Motion at that time.

At the close of Defendants' case, Defendants again moved for partial judgment as a matter of law under Rule 50(a).   Defense counsel stated that he was "attacking the same two claims," which were Plaintiff Wolfe's wrongful discharge and Title VII retaliation claims.   Defense counsel reiterated the same reasoning for his Motion regarding the weaknesses in Plaintiffs' case. The Court again denied Defendants' Motion.

The Court then again asked the parties if there were any additional issues not previously discussed that they wanted to raise regarding the jury instructions before the Court charged the jury.   Both parties stated that they had no further issues to raise.   Accordingly, the Court let each party present closing arguments and then instructed the jury consistent with the Court's final order on jury instructions.   Specifically, regarding Plaintiff Wolfe's claim that Defendants wrongfully discharged her, the Court instructed the jury consistent with Defendants' proposed instruction:

> In order to recover for wrongful or abusive discharge, the plaintiff Kelly Wolfe must prove: (1) an employment relationship (2) termination by the employer; and (3) **the reason for the termination was in violation of a clear mandate of public policy.**

> An employer who terminates an employee for filing a police report
> has violated a clear mandate of public policy.

ECF No. 81, at 45 (emphasis added); *see also* ECF No. 92, at 2.   Likewise, the Court provided

the following instructions to the jury regarding what was required to prove retaliation:

> To prove retaliation, Ms. Wolfe must show by a preponderance of
> the evidence that: (1) she engaged in protected activity; (2) the
> Defendants took a materially adverse action against her; and (3) **her
> protected activity was a but-for cause of the Defendants'
> decision to take a materially adverse action against her.**
> …
> Further, for an employee to prevail on a retaliation claim under Title
> VII of the Civil Rights Act of 1964, Plaintiff **must prove that but-
> for the fact that she engaged in protected activity she would not
> have suffered an adverse employment action.**

ECF No. 89, at 33-35 (emphasis added); *see also* ECF No. 92, at 2.

After the Court had completed instructing the jury, Defendants asked to address two issues

related to the instructions the Court provided to the jury.   First, Defendants objected to the Court's

failure to include an at-will instruction in the jury instructions, explaining that it was their

understanding that the at-will instruction would be included as part of one of the other substantive

instructions.   The Court referred back to the colloquy on the first day of trial during which the

Court sustained Plaintiffs' objection to the at-will instruction, ultimately refusing to fold in the

instruction, explaining its reasoning, and allowing Defendants to maintain their objection.

Second, Defendants objected to the Court's inclusion of Defendants' proposed instruction

on front pay on the grounds that Plaintiffs had presented insufficient evidence supporting a finding

by the jury regarding front pay.   Plaintiffs responded that that they were not seeking front pay, as

supported by the fact that the verdict sheet upon which the parties agreed did not include a question

related to or an opportunity for the jury to award front pay.   Alternatively, Plaintiffs noted that

even were they seeking front pay, Plaintiffs had presented an exhibit evidencing Plaintiff Wolfe's

efforts to find employment beginning in November 2019 and through July 2020.   Defendants, in response, noted that while this may have been the case, any evidence only spoke to Plaintiff Wolfe's efforts to seek subsequent employment for a short period of time.

After the jury returned its verdict, Defense counsel announced his intention to brief and file a Rule 50(b) Renewed Motion for Judgment as a Matter of Law.   Again, Defense counsel stated that he would be making the Motion as to "the two issues which I've already belabored . . . the two discharge claims."

On December 4, 2024, Defendants timely filed this Renewed Motion for Judgment as a Matter of Law.   ECF No. 108.   Plaintiffs, after seeking an extension, filed their Response in Opposition on January 27, 2025, ECF No. 118, to which Defendants replied on March 20, 2025, ECF No. 123.

## LEGAL STANDARD

Defendants have moved for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(b) or, in the alternative, for a New Trial under Federal Rule of Civil Procedure 59.

### I.    Rule 50(b) Motion for Judgment as a Matter of Law

Rule 50(b) motions revolve around the sufficiency of the evidence presented at trial.   As explained by the Fourth Circuit:

> A trial court may grant judgment as a matter of law when it finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the non-moving party.   A court, however, may not disturb the verdict where there was sufficient evidence for a reasonable jury to find in the non-movant's favor.   A trial court may not appropriately enter [JMOL] unless it concludes, after consideration of the record as a whole in the light most favorable to the non-movant, that the evidence presented supports only one reasonable verdict, in favor of the moving party.

*Dotson v. Pfizer, Inc.*, 558 F.3d 284, 292 (4th Cir. 2009) (internal quotation marks and citations omitted) (alteration in original); *see also Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1249 (4th Cir. 1996) ("Because federal courts do not directly review jury verdicts, constrained, as we are, by the Seventh Amendment, the [proponent of a JMOL motion] bears a hefty burden in establishing that the evidence is not sufficient to support the [jury's findings]."). "In determining whether the evidence supports 'only one reasonable verdict,' we refrain from making 'credibility determinations or weigh[ing] the evidence,' as these are 'jury functions, not those of a judge.'" *Reaching Hearts Intern, Inc. v. Prince George's County*, 368 Fed. Appx. 370, 372 (4th Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)) (internal citations omitted). The Court "must grant judgment as a matter of law when there is no legally sufficient evidentiary basis for the verdict." *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 259 (4th Cir. 2001) (citation and internal quotation marks omitted).

## II.     Rule 59 Motions

Though Defendants refer only to a "new trial"—a remedy available under Federal Rule of Civil Procedure 59(a)—Defendants also make requests for the Court to "set aside" an award for reasons unrelated to the sufficiency of the evidence. *See, e.g.*, ECF No. 108-1, at 35 ("Allowing both damage awards to stand would unjustly enrich Ms. Wolfe, by allowing her to recover two damage awards on a single claim. Therefore, the jury's compensatory damage awards should be set aside."); *id.* at 40-41 ("The Jury's Punitive Damages Awards on Ms. Maya's Intentional Tort Claims Must be Set Aside because they are Not Supported by an Underlying Compensatory Damages Award."). The Court interprets these as requests for relief under Rule 59(e), the mechanism through which a party may move to alter or amend a judgment. Accordingly, the Court will address both Rule 59 standards.

### A.  Rule 59(a) Motion for New Trial

Federal Rule of Civil Procedure 59(a):

> [R]equire[s] district courts to set aside the verdict and grant a new
> trial where (1) the verdict is against the clear weight of the evidence,
> or (2) is based upon evidence which is false, or (3) will result in a
> miscarriage of justice, even though there may be substantial
> evidence which would prevent the direction of a verdict.

*Doe v. Fairfax Cnty. Sch. Ed.*, 1 F.4th 257, 268 (4th Cir. 2021) (citations and quotation marks

omitted).   Motions for new trial under Rule 59(a) are "'governed by a different standard' than a

Rule 50(b) motion."   *Harris v. Wormuth*, 669 F. Supp. 3d 477, 500 (D. Md. 2023) (quoting *Cline*

*v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)).   Unlike a Rule 50(b) motion, in

considering a Rule 59(a) motion, a district court "may weigh evidence and assess credibility."   *Id.*

(quoting *Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182, 186 (4th Cir. 1994)).

A Rule 59(a) movant may also argue that the jury returned an excessive verdict.   In such

instances, "remittitur, used in connection with Federal Rule of Civil Procedure 59(a), is the

established method by which a trial judge can review a jury award for excessiveness."   *Atlas Food*

*Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.,* 99 F.3d 587, 593 (4th Cir. 1996).   A court may grant

a defendant's motion for new trial nisi remittitur, "by which the trial court orders a new trial unless

the plaintiff accepts a reduction in an excessive jury award."   *Id.*

### B.  Rule 59(e) Motion to Amend or Alter Judgment

Rule 59(e) enables a litigant to seek to alter or amend a judgment.   The Fourth Circuit has

explained that under Rule 59(e):

> [T]here are three grounds for amending an earlier judgment: (1) to
> accommodate an intervening change in controlling law; (2) to
> account for new evidence not available at trial; or (3) to correct a
> clear error of law or prevent manifest injustice.   Thus, the rule
> permits a district court to correct its own errors, sparing the parties
> and the appellate courts the burden of unnecessary appellate
> proceedings.   Rule 59(e) motions may not be used, however, to
> raise arguments which could have been raised prior to the issuance

of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance . . . In general reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.

*Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (internal citations and quotation marks omitted). "The district court has considerable discretion in deciding whether to modify or amend a judgment." *Nicholson v. Baltimore Police Dept.*, No. 20-3146-DKC, 2024 WL 3424080, at *7 (D. Md. July 16, 2024) (quoting *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008)).

## DISCUSSION

### I.    Rule 50(b) Motion for Judgment as a Matter of Law

Defendants move for Judgment as a Matter of Law on several grounds. They allege that the jury lacked a legally sufficient evidentiary basis to find for Plaintiffs on Plaintiff Wolfe's retaliation and wrongful discharge claims, as well as Plaintiff Maya's false imprisonment and negligent supervision claims. ECF No. 108-1, at 8-30. Defendants then focus their Motion on the jury's damages awards. Specifically, Defendants argue that, even if Plaintiffs offered an adequate evidentiary basis for their wrongful discharge and negligent supervision claims, they did not produce legally sufficient evidence to entitle them to compensatory damages for emotional distress or punitive damages on either claim. ECF No. 108-1, at 30-40.

### A. Defendants Failed to Preserve Their Sufficiency of the Evidence Challenges to Plaintiffs' Negligent Supervision and False Imprisonment Claims.

"Except in circumstances necessary to avoid manifest injustice to the moving party, courts may not consider arguments under Rule 50(b) that the moving party failed to preserve under Rule 50(a)." *Wallace v. Poulos*, 861 F. Supp. 2d 587, 608 (D. Md. 2012) (internal quotation marks and citation omitted). As a precondition to filing a renewed Motion for Judgment as a Matter of Law

under Rule 50(b), a party must have made an initial Rule 50(a) Motion for Judgment as a Matter of Law before the court submitted the case to the jury. *Id.* at 595 ("[Rule 50(b)] necessarily requires the party to have made an initial motion prior to the time that the court submits the case to the jury."); *see also Price*, 93 F.3d at 1248-49 ("Traditionally [a party] is required to have raised the reason for which it is entitled to judgment as a matter of law in its Rule 50(a) motion before the case is submitted to the jury and reassert that reason in its Rule 50(b) motion after trial[.]"). The initial Rule 50(a) motion "must specify the judgment sought and the law and facts that entitle the movant to judgment."  Fed. R. Civ. P. 50(a)(2); *see also Wallace*, 861 F. Supp. 2d at 595. Indeed, a Rule 50(a) motion prior to a Rule 50(b) motion "is not a mere technicality; it serves vitally important interests in the fair conduct of litigation."  *Miller v. Premier Corp.*, 608 F.2d 973, 979 n.3 (4th Cir. 1979).   "Those interests are to protect the Seventh Amendment right to trial by jury, to provide notice to the court and the non-moving party of any alleged deficiencies in the evidence, and to provide the non-moving party with an opportunity to cure the evidentiary deficiency before resting."  *Boley v. Armor Correctional Health Services, Inc.*, No. 23-1493, 2024 WL 5244555, at *5 (4th Cir. Dec. 30, 2024) (unpublished) (citing *Fed. Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 137–38 (4th Cir. 1987)); *see also Wallace*, 861 F. Supp. 2d at 595 (when assessing whether a Rule 50(b) argument was sufficiently raised in a Rule 50(a) motion, "the Fourth Circuit has focused principally on whether the moving party, either in written or oral argument, provided sufficient notice to his opponent of the alleged deficiencies in the opponent's case.").

The Rule 50(a) requirements are not absolute.   "[G]uided by the general principle that the Federal Rules are to be liberally construed," courts have held that a Rule 50(b) motion may be granted absent a previous proper Rule 50(a) motion "where the purposes of Rule 50 have been met

in that both the adverse party and the court are aware that the movant continues to believe that the evidence presented does not present an issue for the jury." *Singer v. Dungan*, 45 F.3d 823, 828–29 (4th Cir. 1995) (quoting *Moore's Federal Practice*, ¶ 50.08, at 50–91).

Here, Defendants' Rule 50(a) motions did not provide Plaintiffs with notice as to the alleged deficiency of the evidence supporting Plaintiff Maya's negligent supervision or false imprisonment claims. At trial, Defense counsel twice moved for Judgment as a Matter of Law. Both times, Defense counsel made the motion only as to the sufficiency of the evidence supporting particular aspects of Plaintiff Wolfe's wrongful discharge and Title VII retaliation claims. After the jury returned its verdict, Defense counsel expressed his intention to file a Rule 50(b) Motion, again stating that the motion would be "attacking the two issues which I've already belabored . . . the two discharge claims." At no point did Defense counsel indicate that he believed that the evidence presented as to Plaintiff Maya's negligent supervision or false imprisonment claims was so insufficient that it did not present an issue for the jury. Thus, Defendants did not preserve these arguments and may not now raise them in their Rule 50(b) Motion. *See Wallace*, 861, F. Supp. 2d at 596 ("Because Plaintiffs did not move for judgment on this basis at trial, they failed to provide Defendants with notice that their defense of the assault claim may have been deficient in this respect . . . [A]s a result, their Rule 50(b) motion on the assault claim is not properly preserved."); *Boley*, 2024 WL 5244555, at *5 ("We find that Defendants' 50(a) motion did not provide Plaintiff with notice as to the alleged deficiency of proximate cause evidence . . . , accordingly, they could not raise the issue in their 50(b) motion."); *Raynor v. G4S Secure Sols. (USA) Inc.*, 327 F. Supp. 3d 925, 935 (W.D.N.C. 2018), *aff'd*, 805 Fed. Appx. 170 (4th Cir. 2020) (unpublished) ("As the record clearly shows a failure to move for judgment as a matter of law on the grounds now raised,

Defendant's arguments are waived."). Accordingly, the Court denies Defendants' Motion for Judgment as a Matter of Law as to Plaintiffs' negligent supervision and false imprisonment claims.

### B. The Jury Had a Legally Sufficient Evidentiary Basis to Find for Plaintiff Wolfe on her Title VII Retaliation Claim.

Title VII prohibits employers from retaliating against employees who oppose discriminatory conduct. *See*, *e.g.*, *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (citing 42 U.S.C. § 2000e-3(a)). Courts in the Fourth Circuit have "[h]istorically . . . considered Title VII retaliation claims under the same standard as discrimination claims." *Id.* A plaintiff alleging retaliation, therefore, can either present direct and indirect evidence of her employer's retaliatory animus or proceed under the *McDonnell Douglas* burden-shifting framework. *See id.* Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of retaliation, *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327-28 (4th Cir. 2018), by showing: (1) "she engaged in a protected activity"; (2) "her employer took an adverse action against her"; and (3) "there was a causal link between the two events." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022) (citing *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016)). If a plaintiff proves these elements, the burden then shifts to the defendant to "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 458 (4th Cir. 2002). If the defendant does so, the burden shifts back to the plaintiff to "demonstrate that the employer's asserted reason is simply a pretext for retaliation." *Id.*

Defendants assert that they are entitled to Judgement as a Matter of Law on Plaintiff Wolfe's Title VII retaliation claim on multiple grounds, arguing that: (1) Plaintiffs produced no evidence showing that Plaintiff Wolfe engaged in protected activity or that Defendants were aware that she engaged in such activity; (2) the jury could not reasonably find for Plaintiff Wolfe on her retaliation claim after finding for Defendants on her hostile work environment claim; (3) the jury could not reasonably find "but for" causation on Plaintiff Wolfe's retaliation claim while also finding for Plaintiff

Wolfe on her wrongful discharge claim; and (4) Plaintiffs failed to show that Defendants' proffered

legitimate nondiscriminatory reason for firing Plaintiff Wolfe was pretextual.  *See* ECF No. 108-1, at

8-18.  Though Defendants make four arguments attacking Plaintiff Wolfe's Title VII claim, not all are

properly preserved or appropriately raised in a Rule 50 motion.

> ### 1.  Defendants Did Not Preserve the Argument that Plaintiff Produced Insufficient Evidence of Protected Activity.

Defendants begin by arguing that Plaintiff Wolfe offered no evidence that she engaged in

protected activity.  ECF No. 108-1, at 8.  However, Defendants did not preserve this argument in their

Rule 50(a) Motion.  At trial, the sole factual basis on which Defendants sought judgment as a matter

of law on the Plaintiffs' Title VII claim was regarding Plaintiffs' failure to show (1) Defendants'

proffered nondiscriminatory reason for termination was pretext and (2) discriminatory retaliation was

the real reason for Plaintiff Wolfe's termination.   At no point did Defense counsel state that he sought

judgment on the claim because Plaintiffs failed to adequately show that Plaintiff Wolfe engaged in

protected activity or that Defendant Ok was aware that she engaged in such activity.   Thus, Defendants

failed to provide Plaintiffs "with notice that their . . . claim may have been deficient in this respect."

*Wallace*, 861 F. Supp. 2d at 596.   Accordingly, Defendants waived this argument for the purposes of

their Rule 50(b) Motion, and the Court will not consider it.

> ### 2.  A Rule 50 Motion is Not the Appropriate Vehicle for Defendants' Arguments that the Jury Returned Inconsistent Verdicts.

Defendants' second and third arguments for judgment as a matter of law on Plaintiff Wolfe's

Title VII retaliation claim both allege that the jury returned an inconsistent verdict.   However, "Rule

50 does not provide a remedy for an inconsistent verdict . . . [T]he proper remedy is not judgment as a

matter of law for the losing party but rather a new trial."  *Lusk v. Virginia Panel Corp.*, No.

13CV00079, 2014 WL 3900325, at *3 (W.D. Va. Aug. 11, 2014) (quoting *Henry v. Dinelle*, 929

F.Supp.2d 107, 119 n.13 (N.D.N.Y. 2013)); *see also Talkington v. Atria Reclamelucifers Fabrieken

BV*, 152 F.3d 254, 261 (4th Cir. 1998) (explaining that a motion for a new trial, rather than a motion

for judgment as a matter of law, is the proper remedy to pursue in the face of an inconsistent jury verdict); *Wallace*, 861 F. Supp. 2d at 597 n.10 (same).   Accordingly, the Court will address these arguments not as part of Defendants' Rule 50 Motion for Judgment as a Matter of Law but, rather, when considering Defendants' alternative Motion for New Trial under Rule 59.

### 3. Plaintiffs Produced Sufficient Evidence to Show that Defendants' Proffered Nondiscriminatory Reason for Terminating Plaintiff Wolfe Was Pretext for Discrimination.

Defendants next argue that they are entitled to judgment as a matter of law on Plaintiff Wolfe's Title VII retaliation claim because Plaintiffs produced no evidence to rebut Defendants' proffered legitimate nondiscriminatory reason for terminating Plaintiff Wolfe.   ECF No. 108-1, at 13.

At trial, Defendants asserted that Plaintiff Wolfe was terminated for using confidential college information to contact a former student for reasons unrelated to her job responsibilities.   Specifically, Defendants claimed that Plaintiff Wolfe contacted a former student, Raquel, to ask personal questions about another former student, Leyla.   Plaintiff Wolfe admitted that she contacted Raquel, but explained that she did so to investigate bullying allegations that a current student had raised with her— something she believed to be within her job responsibilities to provide support to Spanish speaking students.   Plaintiffs further argued that the reason Defendants proffered for her termination was pretext for unlawful discrimination.   "A plaintiff can prove 'pretext either by showing that [the defendant's] explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [retaliation].'"   *Harris v. Wormuth*, 669 F. Supp. 3d 477, 501–02 (D. Md. 2023) (quoting *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004)) (alteration in original).

Plaintiffs produced sufficient evidence for a reasonable jury to find Defendants' explanation of Plaintiff Wolfe's termination "unworthy of credence."   *Mereish*, 359 F.3d at 336.   The evidence— construed in the light most favorable to Plaintiff—includes the following.

To begin, the timeline between Defendant Ok learning of Plaintiff Wolfe's misconduct and finalizing her termination with Dr. Kim was short, with no intervening investigation.   Defendant Ok testified that she first learned about Plaintiff Wolfe's alleged misconduct in an email from Leyla on Friday, November 1, at 7:35 PM.   Defendant Ok then testified that she spoke to Dr. Kim on the morning of Monday, November 4, before giving Plaintiff Wolfe verbal notice of her termination later that day.   Such a short decision-making timeline—learning of alleged misconduct on Friday evening and finalizing a termination decision by Monday morning—could lead a reasonable jury to question the validity of Defendants' explanation and infer pretext. See, *e.g.*, *Harris*, 669 F. Supp. 3d at 504 ("[B]ecasue . . . there does not appear to have been an investigation to clarify exactly what Plaintiff had done, the jury could have inferred that the [incident was] not the sort of . . . violation[] that would ordinarily justify termination.").

Second, while Defendant Ok testified that she gave Plaintiff Wolfe verbal notice of her termination on Monday, November 4, 2019, the only written evidence of Plaintiff Wolfe's termination is in an email from Defendant Ok to Plaintiff Wolfe on Wednesday, November 6, at 12:47 PM.   The November 6 email included a letter of termination dated November 4, 2019.   Plaintiff Wolfe testified that she had not seen the letter of termination or been notified of her termination in any capacity prior to receiving the email on November 6th.   The inconsistencies in testimony regarding when Plaintiff Wolfe learned of her termination, as well as the discrepancies between the date on the termination letter—November 4—and the date it was sent—November 6—could further lead a jury to doubt Defendants' proffered explanation for Plaintiff Wolfe's termination.

Third, the jury could infer pretext form the unclear description of how Plaintiff Wolfe's conduct justified termination.   Plaintiff Wolfe testified that her job responsibilities included keeping an open line of communication with students regarding any problems they had within the program. She further testified that her communication with the former student was within her job duties, as she was working to support current students by investigating a reported bullying incident.   Defendant Ok

22

conceded that contacting and supporting students was part of Plaintiff Wolfe's job, but stated that this specific communication was beyond Plaintiff Wolfe's job responsibilities.   Defendant Ok then testified that Plaintiff Wolfe contacted the former students because she "liked" Leyla's boyfriend and was jealous.   Considering Plaintiff Wolfe's testimony regarding her job responsibilities and Defendant Ok's unclear description of what Plaintiff Wolfe's misconduct entailed, the jury could have concluded that Plaintiff Wolfe's outreach to the former student was not the type of conduct that would ordinarily merit termination.   *See*, *e.g.*, *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 728 n.4 (4th Cir. 2019) ("[P]retext may be established by showing that a justification 'was insufficient to warrant the challenged conduct.'") (quoting *Wexler v. White's Fine Furniture, Inc*., 317 F.3d 564, 576 (6th Cir. 2003)).   Additionally, Defendant Ok's unusual description of Plaintiff Wolfe's motive for her behavior could further lead a jury to question the believability of Defendants' proffered nondiscriminatory reason for firing Plaintiff Wolfe.

Fourth, Dr. Kim's recollection of why Defendant Ok fired Plaintiff Wolfe included no information about Plaintiff Wolfe's alleged inappropriate outreach to former students.   Dr. Kim testified that Defendant Ok called him on the morning of November 4, 2019, to discuss firing Plaintiff Wolfe.   When asked why Defendant Ok said she wanted to fire Plaintiff Wolfe, Dr. Kim replied that "She had some trouble; a lot of trouble."   When pressed on whether Defendant Ok provided any additional explanation of her reasons for firing Plaintiff Wolfe, Dr. Kim repeated only that Plaintiff Wolfe had "trouble."   The jury could infer pretext from Dr. Kim and Defendant Ok's inconsistent recollections of Plaintiff Wolfe's termination.   *See E.E.O.C. v. Sears Roebuck and Co*., 243 F.3d 846, 853 (4th Cir. 2001) ("[T]he fact that [defendant] has offered different justifications at different times . . . is, in and of itself, probative of pretext."); *Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 432 (1st Cir. 2000) ("[W]hen a company, at different times, gives different and arguably inconsistent explanations, a jury may infer that the articulated reasons are pretextual.")

Given the evidence above, a reasonable jury could conclude that Defendants' proffered justifications were not the real reasons for Plaintiff Wolfe's termination. *See*, *e.g.*, *Foster*, 787 F.3d at 254 (finding pretext where the plaintiff "render[ed] the employer's reason so questionable as to raise an inference of deceit.") (internal quotation marks and citation omitted).

Defendants next contend that even if Plaintiffs showed that Defendants' stated reason was false, Plaintiffs did not carry their burden of establishing that discriminatory retaliation was the real reason for Plaintiff Wolfe's termination. ECF No. 108-1, at 13. For a plaintiff to succeed on a retaliation claim, she must establish "both that the [employer's] reason was false and that [retaliation] was the real reason for the challenged conduct." *Foster*, 787 F.3d at 252 (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir.1995) (alterations in original) (establishing that the "real reason" requirement is the "functional[] equivalent" of but-for causation). "If a plaintiff can show that she was fired under suspicious circumstances and that her employer lied about its reasons for firing her, the factfinder may infer that the employer's undisclosed retaliatory animus was the actual cause of her termination." *Id.* at 250 (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.")).

A reasonable jury could conclude Defendants' actual reason for firing Plaintiff Wolfe was to retaliate against her for complaining of discriminatory harassment. As described above, Plaintiffs produced evidence supporting a reasonable inference of the falsity of Defendants' alleged justification for Plaintiff Wolfe's termination. Plaintiffs also offered evidence of suspicious circumstances. Specifically, Plaintiff Wolfe testified that, when she first complained to Defendant Bae and told Defendant Bae of her intention to complain to Defendant Ok and Dr. Kim, Defendant Bae responded by dragging her thumb across her throat in a threatening gesture. Plaintiff Wolfe further testified that Defendant Ok told Plaintiff Wolfe that she did not like Latino people. The jury may also have

24

considered the timeline of events, with Defendant Ok terminating Plaintiff Wolfe just days after Plaintiff Wolfe last asked to speak with Defendant Ok about ongoing harassment.    Lastly, Plaintiffs produced a text from Defendant Ok to Plaintiff Wolfe sent after Plaintiff Wolfe's termination that read: "If you say we do not like Latinos, no one would believe you."    This evidence—alongside the evidence undermining the credibility of Defendants' alleged nondiscriminatory reason—could lead a reasonable jury to conclude that discriminatory retaliation was Defendants' real reason for firing Plaintiff Wolfe.

The "'[d]etermination of motive is ordinarily a function within the province of the fact finder because so much depends on an assessment of the credibility of witnesses,' which the Court may not assess in determining whether to grant a motion for judgment as a matter of law." *Harris,* 669 F. Supp. 3d at 504 (quoting *Taylor v. Home Ins. Co*., 777 F.2d 849, 854 (4th Cir. 1985)).    Further, "[a] finding of motive should not be set aside by the reviewing court unless the evidence clearly compels rejection." *Id.* (quoting *Taylor*, 777 F.2d at 854).    Given the above evidence and the various inferences and conclusions the jury reasonably could have drawn from it, the jury's conclusion does not "compel[] rejection."    Accordingly, Plaintiffs offered sufficient evidence for the jury to conclude both that Defendants' stated reason for Plaintiff Wolfe's termination was false and that unlawful retaliation was the real reason for Plaintiff Wolfe's termination.    The Court will deny Defendants' Motion for Judgment as a Matter of Law as to Plaintiff Wolfe's Title VII retaliation claim.

### C. The Jury Had a Legally Sufficient Evidentiary Basis to Find for Plaintiff Wolfe on her Wrongful Discharge Claim.

To establish a claim of wrongful discharge under Maryland law, a plaintiff must show that: "(1) [s]he was discharged; (2) the basis for [her] discharge violated a clear mandate of public policy; and (3) there was a nexus between [her] conduct and the employer's decision to fire [her]." *Brooks v. Bd. of Educ.*, No. 8:20-CV-03414-AAQ, 2022 WL 17968722, at *3 (D. Md. Dec. 27, 2022) (citing *Wholey v. Sears Roebuck*, 803 A.2d 482, 489 (Md. 2002)).    Regarding the second element, Maryland's

25

highest court has held that "terminating employment on the grounds that the employee (as a victim or witness) . . . reported a suspected crime to the appropriate law enforcement or judicial officer is wrongful and contrary to public policy." *Wholey*, 803 A.2d at 495 (emphasis omitted).

> **1. Plaintiffs Produced Sufficient Evidence for a Reasonable Jury to Conclude that Defendants Knew, Prior to Plaintiff Wolfe's Termination, that Plaintiff Wolfe Filed a Police Report.**

Defendants contend that "Plaintiffs produced no evidence at trial from which a reasonable jury could conclude that Ms. Ok or any other decision maker at the College was aware that Ms. Wolfe had filed a police report prior to her termination." ECF No. 108-1, at 19. Thus, Defendants argue, the jury could not have found a causal nexus between the police report and Plaintiff Wolfe's termination.

Contrary to Defendants' argument, Plaintiffs did offer evidence that decisionmakers at Columbia College were aware that Plaintiff Wolfe had reported Defendant Bae's conduct to the police prior to her termination on November 6. First, the jury could reasonably conclude that Defendant Bae knew that Plaintiff Wolfe had contacted the police on the night of the incident. Plaintiff Wolfe testified that, after the police arrived at the hospital on the evening of November 5, 2019, the police asked for details about Defendant Bae. Plaintiff Wolfe then called and texted other coworkers to find out this information, including Defendant Bae's date of birth. Defendant Bae then texted Plaintiff Wolfe, "Why do you need my birthday?" and that "It's very scary." A jury could conclude from these texts that Defendant Bae knew that Plaintiff Wolfe needed her birthday and other information as part of her report to the police. Additionally, because of the "extremely close" relationship between Defendant Bae and Defendant Ok, a jury could conclude that Defendant Bae told Defendant Ok that Plaintiff Wolfe had contacted the police.

Defendants also incorrectly assert that "Ms. Wolfe did not testify she had informed anyone at the College she had contacted the police." ECF No. 108-1, at 20. Plaintiff Wolfe testified that, after she arrived at Columbia Colleges main campus at around 9:00 a.m. on November 6, she told both

Jenny Kim, a human resources professional at Columbia College, as well as a Vice President of Columbia College that she had reported the incident between Defendant Bae and Plaintiff Maya to the police. Accordingly, based on the evidence—construed in the light most favorable to Plaintiffs—a reasonable jury could find that decisionmakers at Columbia College knew that Plaintiff Wolfe had filed a police report prior to her November 6, 2019, termination, thereby supporting a nexus between the report and Plaintiff Wolfe's subsequent termination.

### D. Damages

Defendants argue that the jury lacked a legally sufficient basis to award any compensatory or punitive damages to Plaintiff Wolfe or Plaintiff Maya on their wrongful discharge and negligent supervision claims, respectively. Defendants have only preserved these arguments as to Plaintiff Wolfe's wrongful discharge claim. In their Rule 50(a) motion, Defendants argued that Plaintiffs produced legally insufficient evidence for a reasonable jury to find for Plaintiff Wolfe on her wrongful discharge claim. Because a verdict for Plaintiff Wolfe on her wrongful discharge claim is a prerequisite to any damages on that claim, Plaintiffs were on notice that Defendants believed the jury lacked a sufficient evidentiary basis for compensatory damages or punitive damages on the wrongful discharge claim. However, because Defendants raised no argument as to the sufficiency of the evidence regarding Plaintiff Maya's negligent supervision claim in their Rule 50(a) Motion, Defendants are not able to now challenge the sufficiency of the evidence regarding compensatory or punitive damages for that claim. Insofar as Defendants argue that the damages are excessive, such an argument is more appropriately raised in Defendants' Rule 59 Motion for New Trial.

> **1. Plaintiffs Produced Sufficient Evidence to Support an Award of Compensatory Damages for Emotional Distress on Plaintiff Wolfe's Wrongful Discharge Claim.**

27

Defendants argue that Plaintiffs produced insufficient evidence to support any award of compensatory damages on Plaintiff Wolfe's wrongful discharge claim. Under Maryland law, noneconomic compensatory damages "may be awarded without proof of pecuniary loss" and "include compensation (a) for bodily harm, and (b) for emotional distress."[4]  *Neal v. U.S.*, 599 F. Supp. 3d 270, 301 (D. Md. 2022) (quoting *Eastern Shore Title Co. v. Ochse*, 160 A.3d 1238, 1256 (Md. 2017)).   Regarding the latter, "plaintiffs who suffered emotional injury can recover 'if the injury was objectively ascertainable and was shown to be a provable consequence of the wrongful conduct.'"  *Finley Alexander Wealth Management, LLC, et al., v. M&O Marketing, Inc.*, No. 19-cv-1312, 2025 WL 1592464, at *10 (D. Md. June 5, 2025) (quoting *Wheeling v. Selene Fin. LP*, 250 A.3d 197, 220 (Md. 2021)).   Thus, Maryland requires plaintiffs seeking compensatory damages for emotional distress to show some consequential physical injury from the emotional distress, interpreting "physical" broadly to include "such things as depression, inability to work or perform household chores, loss of appetite, insomnia, nightmares, loss of weight, extreme

---

[4] The parties' briefs consider the availability of noneconomic compensatory damages under federal law standards.  *See* ECF No. 108-1, at 32-34; ECF No. 118, at 16-17.   However, Defendants are challenging the jury's award of compensatory damages on Plaintiff Wolfe's state law wrongful termination claim.   This Court has supplemental jurisdiction over Plaintiff Wolfe's state law claims, *Wolfe v. Columbia College, Inc*., No. GJH-20-1246, 2021 WL 2805952, at *12 (D. Md. July 6, 2021), and "[f]ederal courts sitting in diversity or exercising supplemental jurisdiction apply state substantive law and federal procedural law," *Graham v. Interworld Cleaning Inc.*, No. CV GLR-16-2179, 2017 WL 4227584, at *3 (D. Md. Mar. 29, 2017) (internal citation and quotation marks omitted).   Thus, the Court will apply Maryland law when assessing the availability of noneconomic compensatory damages.   *See, e.g.*, *Neal v. U.S*., 599 F. Supp. 3d 270, 301 (D. Md. 2022) (applying Maryland law regarding the availability of noneconomic compensatory damages); *Zimmerman v. Novartis Pharm. Corp*., 889 F. Supp. 2d 757, 764 (D. Md. 2012) (finding that state law "govern[s] compensatory damages and liability."); *Gasperini v. Ctr. for Humanities, Inc*., 518 U.S. 415, 437 (1996) ("[W]hen [state] substantive law governs a claim for relief, [state] law and decisions guide the allowable damages.").   The parties appropriately applied Maryland law when briefing the availability of punitive damages.   *See, e.g.*, *Def. Industries, Inc. v. N.W. Mut. Life Ins. Co*., 938 F.2d 502, 504-505 (4th Cir. 1991) (when applying state substantive law and federal procedural law, "state substantive law governs the circumstances justifying an award and the amount of punitive damages.").

nervousness and irritability, withdrawal from socialization, fainting, chest pains, headaches, and upset stomachs." *Wheeling*, 250 A.3d at 219-20; *see also Fields v. Walpole*, No. 11-cv-1000, 2013 WL 2154798, at *3 (D. Md. May 16, 2013) ("Maryland permits 'recovery of damages for emotional distress if there was at least a consequential physical injury.'") (quoting *Hoffman v. Stamper*, 867 A.2d 276, 296 (Md. 2005)).   Evidence of emotional distress must contain more than "mere conclusory statements," *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 63 (Md. 2013), *on reconsideration in part*, 71 A.3d 150 (Md. 2013) (quoting *Hunt v. Mercy Med. Ctr.*, 710 A.2d 362, 369-70 (Md. 1998)); recovery is not permitted "based on the plaintiff simply saying, 'This made me feel bad; this upset me,'" *Fields*, 2013 WL 2154798, at *3 (quoting *Hoffman*, 867 A.2d at 296).

Defendants are incorrect in their assertion that "[a] compensatory damage award for even a small amount of emotional distress damages is unsupportable when it is based predominately on plaintiff's testimony and lacks corroborating medical documentation."   ECF No. 108-1, at 33. Indeed, "there is no reason why the victim's own testimony may not be sufficient, as long as it otherwise provides the jury with enough information to render his or her injuries capable of objective determination." *Fields*, 2013 WL 2154798, at *4 (quoting *Exxon*, 71 A.3d at 64).

Plaintiff Wolfe offered sufficient evidence to support an award of noneconomic compensatory damages for emotional distress on her wrongful discharge claim.   Plaintiff Wolfe testified that, in the wake of the incident at Columbia College and her wrongful discharge, she has experienced panic attacks, sweaty palms, and trouble sleeping, and that her overall temperament had changed.   She further testified that she has sought out treatment for her panic attacks and anxiety from multiple mental health care providers and continues to seek care from a therapist and psychiatrist presently.   In support, Plaintiffs produced a medical record which, though from an allergy and asthma specialist, indicated that Plaintiff Wolfe self-reported symptoms of anxiety on

her intake form when seeking treatment.   Lastly, Plaintiff Wolfe testified that Columbia College's termination of her employment has hindered her in the workplace in the years since, creating a constant fear that she will be subject to similar treatment in new jobs.

Though Plaintiff Wolfe's testimony was the sole source of evidence of her injuries, her testimony went beyond conclusory statements and detailed consequential physical injuries stemming from her emotional distress.   Thus, Plaintiff Wolfe offered sufficient evidence to support an award of compensatory damages on her wrongful discharge claim.   *See*, *e.g.*, *Fields*, 2013 WL 2134798, at *4 (finding that damages for emotional distress were appropriate where plaintiffs' testimony was the only evidence of their injuries and "reflected that all suffered headaches, sleepless nights, social isolation, and anxiety."); *Hoffman*, 867 A.2d at 295 (indicating that a plaintiff's testimony that "whenever he began thinking about his problems, he would get headaches and would vomit," could be sufficient to show an objectively ascertainable consequential physical injury supporting recovery for emotional distress); *Vance v. Vance*, 408 A.2d 728, 734 (Md. 1979) (finding evidence sufficient to establish some physical injury from emotional distress where plaintiff testified that she "went into a state of shock," "engaged in spontaneous crying," and was "unable to sleep and too embarrassed to socialize.").

### 2.    Plaintiffs Produced Insufficient Evidence to Support an Award of Punitive Damages on Plaintiff Wolfe's Wrongful Discharge Claim.

Defendants next assert that the jury lacked a legally sufficient basis to award punitive damages on Plaintiff Wolfe's wrongful discharge claim.   ECF No. 108-1, at 40.   In Maryland, punitive damages are designed "to punish the wrongdoer for particularly egregious or heinous conduct and to deter others from following suit."   *Anne Arundel County v. Reeves*, 252 A.3d 921, 932 (Md. 2021); *see also Beall v. Holloway-Johnson*, 130 A.3d 406, 419 (Md. 2016) ("Punitive damages are reserved typically for punishing the most heinous of intentional torts and

tortfeasors.").   In a Maryland tort case, "a jury may award punitive damages only when a plaintiff

has demonstrated by clear and convincing evidence that the defendant acted with 'actual malice.'"

*Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 837 (Md. 2004) (quoting *Owens-*

*Illinois, Inc. v. Zenobia*, 601 A.2d 633, 654 (Md. 1992)).   Clear and convincing evidence "must

be more than a mere preponderance but not beyond a reasonable doubt."   *Atty. Grievance Commn.*

*of Maryland v. DiCicco*, 802 A.2d 1014, 1025 (Md. 2002) (quoting *Atty. Grievance Commn. of*

*Md. v. Harris*, 784 A.2d 516, 523-24 (Md. 2001).   More specifically, "evidence should be 'clear'

in the sense that it is certain, plain to the understanding, and unambiguous and 'convincing' in the

sense that it is so reasonable and persuasive as to cause one to believe it."   *Mathis v. Hargrove*,

888 A.2d 377, 392 (Md. Spec. App. 2005).

Actual malice includes conduct "characterized by evil motive, intent to injure, ill will, or

fraud."   *Zenobia*, 601 A.2d, at 653; *see also Bowden v. Caldor*, 710 A.2d 267, 276 (Md. 1998)

("[A]n award of punitive damages must be based upon actual malice, in the sense of conscious and

deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud.") (internal

citation and quotation marks omitted); *Montgomery Ward v. Wilson*, 664 A.2d 916, 929 n.5 (Md.

1995) (Actual malice refers to "conduct characterized by evil or wrongful motive, intent to injure,

knowing and deliberate wrongdoing, ill will or fraud . . .").   "What is needed to support an award

of punitive damages is conscious and deliberate wrongdoing."   *Hoffman v. Stamper*, 867 A.2d

276, 301 (Md. 2005).   Accordingly, "negligence alone, no matter how gross, wanton, or

outrageous, will not satisfy [the] standard [of actual malice]."   *Darcars*, 841 A.2d at 837 (quoting

*Zenobia*, 601 A.2d at 654) (alterations in original).   Additionally, "a general claim of actual

malice is not sufficient to justify punitive damages."   *Tierco Maryland, Inc. v. Williams*, 849 A.2d

504, 527 n.29 (Md. 2004).   Rather, "there must be a connection between the form of actual malice

that is alleged by the party seeking punitive damages and the elements of the tort that form the basis of that claim." *Id.* For instance, while "racial animus may be a potential basis for a finding of actual malice," such animus must be related to the tort at issue when considering an award for punitive damages. *Id.* Thus, "[n]ot all forms of 'actual malice' are pertinent to every type of tort action," and different tort actions present varying "actual malice" requirements. *Id.* (quoting *Bowden*, 710 A.2d at 276).

Maryland case law on what "actual malice" requires in a wrongful discharge in violation of public policy claim is limited, but turns on the employer's awareness of the employee's rights at issue and the degree to which the employer specifically sought to violate those rights. In *Moniodis v. Cook*, an employer fired an employee for refusing to submit to a polygraph test while aware of a state statute that prohibited that same conduct. 494 A.2d 212, 222 (Md. Spec. App. 1985). The Maryland trial court found that the employer acted with actual malice because the evidence showed that the employer "was well aware of the appellees' rights under the statute but terminated the appellees in utter disregard for those rights." *Id.* Conversely, in *Kessler v. Equity Management, Inc.*, an employer terminated an employee for refusing to snoop through tenants' private papers. 572 A.2d 1144, 1147 (Md. Spec. App. 1990). The Maryland appellate court noted that, in that case, the plaintiff's "rights as well as the underlying reasons for her termination [were] much less clear than the rights and grounds of discharge" in *Moniodis*, and subsequently found that the evidence, viewed in the light most favorable to the plaintiff, was insufficient to support the jury's finding of actual malice. *Id.* at 1151-52. Specifically, the Court held that the jury could not reasonably infer an intention to deliberately and willfully injure from the act of firing an employee for refusing to look through tenants' private papers. *Id.* at 1152.

Here, Plaintiffs did not provide clear and convincing evidence that Defendant Ok acted with actual malice in terminating Plaintiff Wolfe in response to her filing a police report. Plaintiffs produced no evidence that Columbia College decisionmakers were aware of and consciously disregarded Plaintiff Wolfe's right to file a police report.   Additionally, as in *Kessler*, the grounds for Plaintiff Wolfe's discharge are certainly "less clear" than those depicted in *Moniodis*, as Plaintiff Wolfe asserted multiple wrongful reasons for her termination, both of which relied on the jury making certain inferences.   Further, while racial animus may support a finding of actual malice, Plaintiffs have not argued—neither at trial nor in their briefing on the Motion now before the Court—that racial animus motivated Defendants when terminating Plaintiff Wolfe in response to the police report.   Instead, Plaintiffs argue that the jury could infer actual malice from (1) the relationship between Defendants Ok and Bae and (2) the content of text messages from Defendant Ok to Plaintiff Wolfe sent after Plaintiff Wolfe's termination demonstrating "how uneasy and angry [Defendant Ok] was from Wolfe filing a police report against Bae."   ECF No. 118, at 20.   This evidence fails to clearly and convincingly demonstrate that Defendant Ok, in firing Plaintiff Wolfe because she filed a police report, acted with an evil motive or an intent to injure Plaintiff Wolfe, as defined under Maryland law.

Accordingly, Plaintiffs did not produce sufficient evidence to support the jury's award of punitive damages; the Court will grant Defendants' Motion for Judgment as a Matter of Law as to the jury's award of $75,000 in punitive damages on Plaintiff Wolfe's wrongful discharge claim.

## II.     Rule 59(a) Motion for New Trial

In the alternative to their Motion for Judgment as a Matter of Law, Defendants have moved for New Trial under Rule 59 of the Federal Rules of Civil Procedure.   Rule 59 provides an avenue for litigants to seek a new trial under Rule 59(a) or to alter, amend, or vacate a prior judgment under Rule 59(e).   A court may interfere with a jury verdict under Rule 59 "only where the verdict

is 'against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice.'"  *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 107 (4th Cir. 1991) (quoting *Def. Industries, Inc. v. N.W. Mut. Life Ins. Co.*, 938 F.2d 502, 507 (4th Cir. 1991)).

As to Rule 59(a), Defendants argue that they are entitled to new trial based on the following: (1) the jury's verdict was against the weight of the evidence, (2) the jury returned an inconsistent verdict; (3) the jury awarded excessive damages; and (4) the Court erred in its selection and delivery of jury instructions.

### A.  The Jury's Verdict Was Not Against the Clear Weight of the Evidence.

Defendants have failed to show that the jury's findings were against the clear weight of the evidence.   The Court begins by noting that Defendants failed to brief their Rule 59 motion in any substantive manner.   At no point did Defendants outline the standard for a Rule 59(a) or 59(e) motion, nor did they provide any legal reasoning as to why they have satisfied either standard. Rather, fragments of Defendants' Rule 59 arguments were either incorrectly embedded within Rule 50(b) briefing or not addressed at all beyond the statement that "in the alternative, Defendants . . . request a new trial pursuant to Fed. R. Civ. P. 50(b)(2) and Rule 59."   ECF No 108-1, at 41. In over sixty pages of briefing, Defendants make only two, brief mentions of the "weight of the evidence," and both times as part of largely conclusory statements regarding whether Plaintiff Wolfe complained of discrimination and whether Plaintiff Maya suffered a meaningful injury because of Defendant Bae's behavior.   ECF No. 108-1, at 11, 36.   Even when substantively briefed, "[t]he standard for granting a Rule 59 motion, while permitting the court to assess credibility, is still a high bar."   *Qiydaar v. People Encouraging People, Inc.*, No. CV ELH-17-1622, 2021 WL 2260286, at *6 (D. Md. June 3, 2021), *aff'd*, No. 21-1734, 2022 WL 2965654 (4th Cir. July 27, 2022) (internal quotation marks and citation omitted).

While a Court may exercise its discretion to grant a new trial even if enough evidence supports the verdict to defeat a Rule 50 motion, *see*, *e.g.*, *Harris*, 669 F. Supp. 3d, at 505, such an action is not appropriate here.   Not only have Defendants failed to comprehensively argue that the jury's verdict was against the clear weight of the evidence, but the Court finds that Plaintiffs produced sufficient evidence to warrant a jury verdict.   Plaintiffs put forth Plaintiff Wolfe's own testimony that she was harassed in the workplace and complained of that harassment, Plaintiffs Wolfe and Maya's descriptions of their emotional and physical injuries, text messages from Defendant Ok supporting an inference of discriminatory intent, and testimony from Defendants highlighting the lack of clarity surrounding Plaintiff Wolfe's termination.   Additionally, while both attorneys presented arguments at trial attempting to undermine the credibility of the opposing party's witnesses, any questions as to witness credibility apply equally to the witnesses on both sides.   Thus, even weighing the evidence and considering the credibility of the witnesses as the Rule 59 standard permits, the evidence in this case is not so lopsided such that the jury's verdicts for Plaintiffs go against the clear weight of the evidence.   Rather, "the jury was presented with conflicting testimony.   And, the jury was entitled to resolve the conflicts in favor of [Plaintiffs]." *Qiydaar*, 2021 WL 2260286, at *6.

### B.  The Jury's Verdict Was Not Inconsistent

Defendants claim that multiple aspects of the jury's verdict are inconsistent.   First, Defendants claim that the jury, after finding for Defendants on Plaintiff Wolfe's hostile work environment claims, could not have then reasonably found that Plaintiff Wolfe engaged in protected activity for the purposes of her Title VII retaliation claim.   ECF No. 108-1, at 11. Specifically, Defendants argue that the jury could not have found that Plaintiff Wolfe reasonably believed that she was experiencing unlawful harassment.   *Id.*

A plaintiff engages in protected activity when she "complain[s] to [her] superiors about suspected violations of Title VII." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (quoting *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543–44 (4th Cir.2003)). Importantly, the anti-retaliation provision of Title VII "protects employees even when they complain of actions that are not actually unlawful under Title VII," so long as they reasonably believe the conduct is unlawful. *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018). Thus, for Plaintiff Wolfe to establish that she engaged in protected activity, she did not need to show that she was actually subject to a hostile work environment, but, rather, that she reasonably believed she was subject to such an environment. *Id.* at 328 ("[O]ur inquiry is whether the circumstances known to [plaintiff] at the time of her complaint support a reasonable belief that a hostile work environment existed or was in progress."); *see also Sraver v. Surgical Monitoring Services, Inc.*, No. CIV. CCB-05-1331, 2006 WL 2190727, at *6 (D. Md. July 27, 2006) ("If [plaintiff] held a reasonable belief, she may maintain her retaliation claim even though she cannot maintain a claim for hostile work environment.").

Defendants misstate the law in arguing that, "[b]y finding for Defendants [on Plaintiff Wolfe's hostile work environment claims], the jury necessarily concluded that a hostile work environment did not exist, was not in the process of forming, and it was not reasonable for Plaintiff Wolfe to believe otherwise." ECF No. 108-1, at 12. The jury, in finding for Defendants on Plaintiff Wolfe's hostile work environment claims, concluded only that Plaintiff Wolfe was not subject to a hostile work environment because of her national origin or sex. It made no finding as to whether Plaintiff Wolfe could reasonably believe that she was experiencing an unlawful hostile work environment. Thus, it was not inconsistent for the jury to find that, even though the elements

of Plaintiff Wolfe's hostile work environment claims were not satisfied, Plaintiff Wolfe reasonably believed that they were.

Defendants' argument that the jury could not consistently find for Plaintiff Wolfe on both her retaliation and wrongful discharge claims is similarly unsuccessful. Defendants contend that if the jury found that Defendants fired Plaintiff Wolfe for filing a police report—as evidenced by its verdict on Plaintiff Wolfe's wrongful discharge claim—it could not, as a matter of law, have also found Plaintiff Wolfe's complaints of discrimination to be a but-for cause of her termination. ECF No. 108-1, at 16. "[R]etaliation plaintiffs are limited to 'traditional principles of but-for causation' and must be able to prove that 'the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Foster*, 787 F.3d at 249 (quoting *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570, U.S. 338, 360 (2013)). In comparison, a plaintiff claiming wrongful discharge in violation of public policy must show a "nexus between the employee's conduct and the employer's decision to fire the employee." *Wholey v. Sears Roebuck*, 803 A.2d 482, 489 (Md. 2002).

Plaintiff Wolfe's Title VII retaliation and wrongful discharge claims are not, as Defendants argue, mutually exclusive. Indeed, "the assertion of multiple *wrongful* reasons for termination does not mean that [a] [p]laintiff's causation argument fails." *Schmidt v. Town of Cheverly, MD.*, 212 F. Supp. 3d 573, 582 (D. Md. 2016) (emphasis in original). A retaliation plaintiff's "burden is only to show that the protected activity was a but-for cause of her termination, not that it was the sole cause." *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 218 (4th Cir. 2016). Accordingly, it was not inconsistent for the jury to conclude both that (1) there was a casual nexus between Plaintiff Wolfe's termination and her filing of the police report and (2) that Plaintiff Wolfe would not have been fired but-for Defendants' retaliatory animus.

Because neither of Defendants' arguments identify an inconsistency in the jury's verdict, the Court will deny Defendants' Motion for New Trial on these grounds.

### C.  The Jury's Damages Awards Are Not Excessive and Do Not Warrant a Grant of New Trial Nisi Remittitur.

While Defendants argue that Plaintiffs are not entitled to any punitive or compensatory damages on their wrongful discharge and negligent supervision claims as a matter of law, they argue, in the alternative, for a new trial on the basis that the amounts awarded are excessive.  *See*, *e.g.*, ECF No. 108-1 at 34 ("[T]he jury lacked a legally sufficient evidentiary basis to justify any award of emotional distress damages, much less an award of $160,000.); *id.* at 37 ("Even if the jury could reasonably conclude Ms. Maya was entitled to some level of compensation, they lacked a legally sufficient evidentiary basis to award $49,000."); *id.* at 40 ("[T]he jury's punitive damage awards are unreasonable.").

"Whether a jury award is excessive is a question of law."  *Konkel v. Bob Evans Farms, Inc.*, 165 F.3d 275, 280 (4th Cir. 1999).   "If the court finds that a jury award is excessive, it may 'grant a new trial nisi remittitur, which gives the plaintiff the option of accepting the remittitur or of submitting to a new trial.'"  *Hicks v. Ferreyra*, 582 F. Supp. 3d 269, 291 (D. Md. 2022), *aff'd*, 64 F.4th 156 (4th Cir. 2023) (quoting *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 n.2 (4th Cir. 1998)).   Indeed, "if a court finds that a jury award is excessive, it is the court's duty to require a remittitur or order a new trial."  *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 593 (4th Cir. 1996).

The Fourth Circuit has long expressed a deference to jury verdicts, noting that, under Rule 59, an "award shall stand unless no substantial evidence is presented to support it, it is against the clear weight of the evidence, it is based upon evidence that is false, or it will result in a miscarriage of justice."  *Barber v. Whirlpool Corp.*, 34 F.3d 1268, 1279 (4th Cir. 1994).   Courts are

38

particularly reticent to override "a jury's award of damages for intangible harms, such as emotional distress, 'because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses.'" *Fox v. Gen. Motors Corp*., 247 F.3d 169, 180 (4th Cir. 2001) (quoting *Giles v. Gen. Elec. Co*., No. 99-11059, 2001 WL 184579 (5th Cir. Feb. 26, 2001)).   Thus, "[a] jury's award of damages stands unless it is grossly excessive or shocking to the conscience." *Id.* (quoting *O'Rourke v. City of Providence,* 235 F.3d 713, 733 (1st Cir.2001)).   A district court may not set aside a verdict as excessive simply because it would have awarded lesser damages. *Stebbins v. Clark*, 5 F. App'x 196, 202 (4th Cir. 2001) (unpublished).

If a motion for new trial "rests on alleged excessiveness of the jury's verdict . . . state law standards must be applied to the verdict on the state law claims."   *McCollum v. McDaniel,* 136 F. Supp. 2d 472, 475 (D. Md. 2001), *aff'd,* 32 Fed. Appx. 49 (4th Cir. 2002) (unpublished).   Thus, when reviewing awards of both compensatory and punitive damages on a state law claim, "a district court must 'apply the substantive component of a state's law concerning the excessiveness of a verdict.'"   *Nicholson v. Baltimore Police Dept*., No. 20-3146, 2024 WL 3424080, at *9 (D. Md. July 16, 2024) (quoting *Steinke v. Beach Bungee, Inc*., 105 F.3d 192, 197 (4th Cir. 1997)). *See also Atlas*, 99 F.3d at 593 ("[A] federal district court reviews [an award of punitive damages] by applying the state's substantive law of punitive damages under standards imposed by federal procedural law.").

### 1. Compensatory Damages

Defendants challenge the jury's compensatory damages award on Plaintiff Wolfe's wrongful discharge claim and Plaintiff Maya's negligent supervision claims, both of which arise under state law.   Under Maryland law, "[a] court may order 'remittitur based on the excessiveness of compensatory damages' when the court finds that 'the verdict is grossly excessive, or shocks the conscience of the court, or is inordinate or outrageously excessive, or even simply

excessive.'" *Finley Alexander Wealth Mgt., LLC v. M&O Mktg., Inc.*, No. CV 19-1312 SAG, 2025 WL 1592464, at *9 (D. Md. June 5, 2025) (quoting *Exxon Mobil Corp. v. Ford*, 71 A.3d 105, 135 (Md. 2013) (internal quotation marks and citations omitted)).   *See also Nicholson*, 2024 WL 3424080, at *9.   Maryland courts have found that for an award of compensatory damages to be deemed excessive, "it must, in light of the noneconomic injuries to [plaintiff], be so absurdly high that 'all mankind' would 'exclaim against [it] at first blush.'"   *Finley*, 2025 WL 1592464, at *10 (quoting *Conklin v. Schillinger*, 257 A.2d 187, 197 (Md. 1969)).   Because "the jury is sacrosanct and its importance is unquestioned," *Blitzer v. Breski*, 303 A.3d 88, 102 (Md. Spec. App. 2023) (quoting *John Crane, Inc. v. Puller*, 899 A.2d 879, 908 (2006)), "the trial judge should extend the fullest consideration possible to the amount returned by the jury" before deeming a verdict excessive, *Finley*, 2025 WL 1592464, at *9 (quoting *Conklin*, 257 A.2d at 197).   Even so, "[a] district court's discretion in determining whether to grant a new trial based on excessiveness or damages is 'wide and virtually boundless[.]'"   *Nicholson*, 2024 WL 3424080, at *9 (quoting *Blitzer*, 303 A.3d at 102).

### a.  The Jury's Award of $160,000 in Compensatory Damages to Plaintiff Wolfe Is Not Excessive.

Defendants have failed to show that the jury's compensatory damages award on Plaintiff Wolfe's wrongful discharge claim was grossly excessive or shocks the conscience.   Defendants' briefing focuses primarily on their argument that Plaintiff Wolfe produced insufficient evidence to merit any award of compensatory damages at all rather than articulating why the award was so excessive as to merit a new trial or remittitur.   However, Defendants generally argue that the award was neither supported by the evidence nor proportional to Plaintiff Wolfe's injuries.   ECF No. 108-1, at 32-33.   Having found that Plaintiff Wolfe did, in fact, produce a sufficient evidentiary basis for an award of compensatory damages, the Court now also finds—particularly

considering the Court's deference to jury awards for emotional distress, *Fox*, 247 F.3d at 180—that the jury's award is not excessive.

Plaintiff Wolfe produced a significant amount of evidence regarding the emotional and physical distress she experienced following the events at Columbia College.   According to her testimony, Plaintiff Wolfe witnessed an assault on her mother which led her mother to experience heart palpitations and express that she might suffer additional physical distress.   Plaintiff Wolfe then brought her mother to the emergency room and reported the assault to the police.   The jury determined that Plaintiff Wolfe was fired, in part, because she filed the police report.   Since her termination, Plaintiff Wolfe testified to panic attacks, sweaty palms, trouble sleeping, and a changed temperament.   She also has sought extensive mental health treatment from multiple providers over the course of several years.   Given the evidence produced at trial, the jury's award of $160,000 is not "so high that 'all mankind' would 'exclaim against [it] at first blush.'"   *Finley Alexander Wealth Mgt., LLC*, 2025 WL 1592464, at *3 (quoting *Conklin*, 257 A.2d at 197).   Thus, the award is not against the clear weight of the evidence, nor will allowing it to stand result in a miscarriage of justice.   *See*, *c.f.*, *Finley*, 2025 WL 1592464, at *11 (holding that a noneconomic damages award of $860,000 in a defamation case was not grossly excessive and did not warrant remittitur); *Bingman v. Baltimore Cnty.*, 714 Fed. Appx. 244 (4th Cir. 2017) (unpublished) (finding that, given plaintiff's testimony "as to the nature of his emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life," a compensatory damages award of $298,000 for plaintiff who was terminated in violation of the ADA was not grossly excessive or shocking to the conscious) (internal citation and quotation marks omitted).   Accordingly, the Court will deny Defendants' Motion for New Trial as to compensatory damages on Plaintiff Wolfe's wrongful discharge claim.

**b.  The Jury's Award of $49,000 in Compensatory Damages to Plaintiff Maya Is Not Excessive.**

As with the compensatory damages awarded to Plaintiff Wolfe, the jury's award of $49,000 in compensatory damages on Plaintiff Maya's negligent supervision claim is not so high as to shock the conscience of the Court.   Plaintiff Maya testified that Defendant Bae grabbed, shook, and followed her.   Both Plaintiffs Wolfe and Maya testified that Defendant Bae stabbed Plaintiff Maya with a pen and that, as a result, Plaintiff Maya experienced a cardiac episode for which she went to the hospital.   Plaintiff Maya further testified that she became unable to see or hear clearly and that, due to the severity of her cardiac symptoms, she believed that she was going to die. Plaintiffs presented the jury with photos of bruising on Plaintiff Maya's arm from the pen wound and swelling on Plaintiff Maya's knee from a fall she sustained while trying to remove herself from Defendant Bae.   Plaintiff Maya testified that she still has trouble with her knee from the fall. Given the evidence produced at trial, the jury's award of $49,000 in compensatory damages to Plaintiff Maya is not "grossly excessive" and does not "shock the conscience of the court."   *See Nicholson*, 2024 WL 3424080, at *10 (quoting *Blitzer*, 303 A.3d at 102).   Thus, the Court denies Defendants' Motion for New Trial as to Plaintiff Maya's compensatory damages on her negligent supervision claim.

**2.  Punitive Damages**

Because the Court granted Defendants' Rule 50(b) Motion as to Plaintiff Wolfe's punitive damages on her wrongful discharge claim, the Court need not review that award for excessiveness. However, the Court will review the jury's award of $200,000 in punitive damages to Plaintiff Maya.

Like an award for compensatory damages, a district court reviews an award of punitive damages for excessiveness "by applying the state's substantive law of punitive damages under

standards imposed by federal procedural law." [5]   *Atlas*, 99 F.3d at 593.   "Thus, the district court is 'to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered.'"   *Id.* (quoting *Browning–Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc*., 492 U.S. 257, 279 (1989)).   While the Rule 59 standards remain constant—that a verdict should only be set aside if it is against the clear weight of the evidence, based upon evidence which is false, or will result in a miscarriage of justice—they operate differently as applied to a punitive damages award.   Because a jury's determination of the amount of punitive damages is not a factual measurement of degree of injury, a district court reviewing a punitive damages award is best guided by "the third prong of the Rule 59 standard—whether the jury's award will result in a miscarriage of justice."   *Id.* at 594; *see also Butler v. Windsor*, 143 F. Supp. 3d 332, 336 (D. Md. 2015) ("The court considers the 'miscarriage of justice' prong when a plaintiff challenges the amount of punitive damages awarded").   Given the unique nature of punitive damages, a jury's decision as to the amount of a punitive damages award "is reviewable by federal trial courts under Federal Rule of Civil Procedure 59 less deferentially than are factual findings which may be measured against the factual record."   *Atlas*, 99 F.3d at 595.

Maryland courts have "identified nine legal principles that inform a court's determination of whether punitive damages are excessive."   *Harvey-Jones v. Coronel*, 196 A.3d 36, 43 (Md.

---

[5] Notably, federal substantive law applies if a party challenges a jury's punitive damage award on constitutional grounds.   In that case, to determine whether a punitive damages award violates the Due Process Clause of the Fourteenth Amendment, courts asses: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."   *Butler v. Windsor*, 143 F. Supp. 3d 332, 336 (D. Md. 2015) (quoting *Wallace*, 861 F. Supp. 2d at 603). Defendants raise no such constitutional challenge to the jury's punitive damages award.

Spec. App. 2018) (citing *Khalifa v. Shannon*, 945 A.2d 1244, 1264 (Md. 2008); *Bowden v. Caldor*, 710 A.2d 267, 288 (Md. 1998)); *see also Mahoney v. iProcess Online, Inc.*, 681 F. Supp. 3d 446, 451-52 (D. Md. 2023).   Sometimes referred to as the "*Bowden* factors," *see Khalifa*, 945 A.2d, at 1265, the list of considerations is not "exclusive or all-encompassing" but intended to serve as "guideposts to assist a court in reviewing an award." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 843-44 (Md. 2004) (citing *Bowden*, 710 A.2d at 285).   Additionally, not all the factors are pertinent in every case.  *Id.* at 843.   The *Bowden* factors include, among other considerations, the amount of other punitive damages awards in similar cases, the gravity of defendants' conduct, the deterrent value of the award, and the relationship between compensatory and punitive damages.[6]  *See Khalifa*, 945 A.2d at 1265.

Though Defendants move for a new trial and state that the jury's $200,000 award of punitive damages to Plaintiff Maya is "unreasonable," ECF No. 108-1, at 40, Defendants present no argument as to why Plaintiff Maya's punitive damages award is excessive in light of the *Bowden* factors.   Instead, Defendants focus their Motion on the fact that the jury lacked a legally sufficient evidentiary basis to award Plaintiff Maya any punitive damages at all—an argument they failed to preserve.   Nonetheless, the Court will still assess whether the jury's punitive damages award constitutes a miscarriage of justice.

---

[6]  The full list of Bowden factors is as follows: "(1) proportionality to the defendant's wrongdoing; (2) proportionality to the defendant's ability to pay; (3) deterrence value; (4) comparability to criminal fines; (5) comparability with other punitive awards; (6) the non-requirement of evidence of other punitive awards against the same defendant for the same conduct; (7) other available relief; (8) the plaintiff's reasonable costs and expenses; and (9) comparability to compensatory damages." *The Ritz, LLC, et al. v. Buddy's River Grill & Oyster Bar LLC, et al*, 2025 WL 1703469, at *22 (Md. Ct. Spec. App. June 18, 2025) (citing *Bowden v. Caldor, Inc*., 710 A.2d 267, 288 (Md. 1998)).

First, the Court notes that the punitive damages award is approximately four times greater than the compensatory damages award.   While ratios of compensatory to punitive damages "are not binding, they are instructive."   *Butler*, 143 F. Supp. 3d at 338 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)).   A ratio of four to one has been found "acceptable" and does not tend to indicate a miscarriage of justice.   *Id.* ("The *Campbell* Court did, however, consider the compensatory damages award and reiterate the '4–to–1 ratio' of acceptable punitive damages compared to compensatory damages, noting that it had 'cited that 4–to–1 ratio again' in *BMW of North America v. Gore,* 517 U.S. 559 (1996)") (quoting *Campbell*, 538 U.S. at 425).   As to the gravity of the wrong, Columbia College's conduct—negligently supervising a potentially dangerous employee—caused Plaintiff Maya to experience physical injury as well as emotional anguish.   The degree of reprehensibility is "[t]he most important indicium of the reasonableness of a punitive damages award," and Maryland courts typically find physical harm to be a stronger indicator of reprehensibility than economic harm.   *Butler*, 143 F. Supp. 3d at 336 (quoting *Wallace*, 861 F. Supp. 2d at 604) (alteration in original).   Regarding deterrence, there is significant value in deterring conduct like that displayed by Columbia College and encouraging employers to heed complaints from employees regarding unsuitable and potentially dangerous work environments.   Lastly, Maryland courts and federal courts applying Maryland law have awarded or upheld similar amounts of punitive damages in the past, including in cases which did not result in any physical harm.   *See, e.g., Fid. First Home Mortg. Co. v. Williams*, 56 A.3d 501 (Md. Spec. App. 2012) (upholding a punitive damages award of $150,000, worth $210,481.23 [7] today, in a negligent supervision case where employee's fraud caused

---

[7] Calculations were performed with the CPI [Consumer Price Index] Inflation Calculator from the date (month and year) of opinion publication to July 2025, the most recent date for available data. U.S. Dep't of Labor Bureau of Labor Statistics, *CPI Inflation Calculator*,

plaintiff to lose title to her home); *Great Atl. & Pac. Tea Co. v. Paul*, 261 A.2d 731 (1970) (battery, slander, and false imprisonment case involving $30,000 of punitive damages, valued at $255,037.89 today); *St. Luke Church v. Smith,* 568 A.2d 35 (1990) (defamation case involving punitive damages award of $105,875 against a single party, worth $268,467.09 today); *FLP Glob. Services, LLC v. TaylorMade Sols., LLC*, 2025 WL 1064763 (Md. Spec. App. Apr. 9, 2025) (breach of contract case where jury awarded $1,000,000 in punitive damages and trial court reduced to $500,000); *Harvey-Jones v. Coronel*, 196 A.3d 36 (Md. Spec. App. 2018) (upholding $200,000 punitive damages award in defamation case).

Given the reasonable ratio of compensatory to punitive damages, the physical harm suffered by Plaintiff Maya, and the similar punitive damages awards granted in cases with no physical injury, along with the fact that Defendants have not articulated an argument for why the award is excessive as a matter of law, the Court declines to find that the award constitutes a miscarriage of justice. Thus, Defendants' Motion for New trial will not be granted based on the excessiveness of punitive damages.

### D. Neither the Court's Exclusion of Defendants' Proposed At-Will Instruction, Nor the Inclusion of Defendants' Front Pay Instruction Constituted Prejudicial Error.

Defendants allege that the Court erroneously failed to include an at-will instruction and exclude their own previously proposed front pay instruction. "Jury instructions are only erroneous if they are inaccurate on the law or tend to confuse or mislead the jury. Furthermore, errors in jury instructions are subject to harmless error analysis. Any error must have been prejudicial to the complaining party in order to mandate reversal." *Henderson v. Winston*, 59 F.3d 166, 1995 WL 378602, at *4 (4th Cir. 1995) (unpublished table decision).

---

https://www.bls.gov/data/inflation_calculator.htm (last visited August 19, 2025).

Neither of Defendants' arguments merits a second trial.  The Court properly excluded the at-will instruction, reasoning that its inclusion would confuse the jury.  Defendants fail to present any authority in support of their argument that the Court was required to include an at-will instruction.  Defendants' objection to the Court's inclusion of their proposed front-pay instruction is inconsequential, given that the jury did not award any front pay.

### 1.    After Considering Both Parties' Arguments and Providing Them Notice, the Court Properly Excluded Defendants' Proposed At-Will Instruction.

Neither of Defendants' arguments in support of the inclusion of their proposed at-will instruction merits a new trial.  Defendants' argument that the Court committed procedural error by failing to provide them with notice of the final jury instructions and, relatedly, an opportunity to object, simply misstates the proceedings, as reflected on the docket.  Likewise, as highlighted by Defendants' failure to provide any authority in support, the Court did not abuse its discretion in excluding Defendants' proposed at-will instruction.  Defendants are not, as they claim, entitled to an at-will jury instruction in every wrongful discharge case, as a matter of law.

### a.    Defendants Misstate the Course of Proceedings Regarding the Final Jury Instructions.

As detailed above and as reflected on the docket, the Court—consistent with its representations to the parties during the Final Pre-Trial Conference—provided the parties notice of the final jury instructions and an opportunity to object.  During the Final Pre-Trial Conference, the Court gave both parties the opportunity to object to any proposed instructions from the other party, explaining that this would be the forum to address any issues related to the proposed instructions.  Both parties disagreed as to whether an at-will instruction should be included in the final jury instructions, presenting argument in support of their respective positions.  The Court deferred ruling on the issue, explaining that it would issue a final set of jury instructions, resolving

the issue.  Consistent with its promise to the parties, and as reflected on the docket, the Court

issued an Order listing the final set of jury instructions.  ECF No. 92.  Additionally, before trial

commenced on the first day of trial, the Court explained its reasoning for excluding Defendants'

proposed at-will instruction.  The Court explained that: 1) there was no binding authority—and

Defendants had presented none—requiring the inclusion of an at-will instruction; 2) available

authority suggested that the exclusion of an at-will instruction in a Title VII case did not constitute

an abuse of discretion; and 3) the inclusion of the instruction was likely to confuse the jury, given

its potential conflict with second step of the *McDonnell Douglas* framework which requires that

once Plaintiffs make a prima facie case, Defendants bear the burden of presenting a legitimate non-

retaliatory reason for the termination.[8]  The Court then presented Defendants an opportunity to

preserve their objections, which they did.[9]  Defendants presented no further argument, but

---

[8] Consistent with some of their other arguments, Defendants' description that the Court ruled that the inclusion of an at-will instruction would "always" be prejudicial to a plaintiff overstates the Court's ruling.  The Court's ruling—which did not include this specific terminology—reflected the parties' arguments, the authority—or lack thereof—that they presented, and the nature of the case.  Defendants' argument attempts to reverse the relevant question before the Court.  As discussed *supra*, the relevant question is not whether a plaintiff is always prejudiced by the inclusion of an at-will jury instruction, but rather, whether the exclusion of an at-will jury instruction always prejudices the Defendants in a wrongful discharge case, such that the Court's failure to include one entitles Defendants to a new trial, as a matter of law.  The heading in Defendants' opening motion seems to acknowledge this point, but then characterizes the argument differently later in the briefing.  *Compare* ECF No. 108-1, at 21 ("Defendants Were Prejudiced When the Court Denied Defendants' Request for an At-Will Employment Instruction Because the Jury Was Misled on the Legal Standards Governing Ms. Wolfe's Wrongful Discharge Claim") *with id.* at 23 ("The Court overruled Defendants' objection, holding that whenever a case involves a Title VII retaliation claim, the inclusion of an at-will instruction is always unduly prejudicial to the plaintiff.").

[9] Defendants' briefing also misstates when the Court made its ruling.  The Court ruled on the issue on the first day of trial, not after the jury instructions had been read.  Although Defendants raised the issue again after the Court had instructed the jury, the Court merely reminded the parties of its previous ruling on the matter.

maintained their objection.   Finally, on the final day of trial, once both parties had presented their cases, the Court again inquired as to whether either party had any issues they wanted to raise regarding the final set of jury instructions.   Both parties stated that they did not have any further issues to raise beyond those that they had previously addressed.   Defendants' arguments to the contrary—that they were denied notice of the final instructions and an opportunity to object— simply ignore all of the happenings after the Final Pre-Trial Conference.[10]

### b. The Court Properly Excluded Defendants' Proposed At-Will Instruction.

"The test of the adequacy of jury instructions is whether the jury charge, construed as a whole, adequately states the controlling legal principle without misleading or confusing the jury." *Chaudhry v. Gallerizzo,* 174 F.3d 394, 408 (4th Cir. 1999). "An error of law constitutes an abuse of discretion." *A Helping Hand, LLC v. Balt. County, Md.,* 515 F.3d 356, 370 (4th Cir. 2008).   However, a jury verdict is not to be set aside "based on an instructional error 'unless the erroneous instruction seriously prejudiced the challenging party's case.'" *Willingham v. Crooke,* 412 F.3d 553, 560 (4th Cir. 2005) (quoting *College Loan Corp. v. SLM Corp.,* 396 F.3d 588, 595 (4th Cir. 2005)).

Defendants do not argue that the Court improperly instructed the jury, or excluded a vital element of Plaintiffs' wrongful discharge claim.   The Court, employing the instruction Defendants provided to the Court, properly instructed the jury on Maryland law regarding wrongful discharge.

---

[10]  The Court assumes that Defendants arguments are made in good faith; that is, they simply reflect a failure to closely review the docket and an unintentional mistake as to the history of the case.

No court has held, as Defendants argue, that Defendants are entitled to the reading of an at-will instruction in every wrongful discharge case, such that the exclusion of such an instruction constitutes error as a matter of law.

Meanwhile, several courts have expressed concern about giving such instructions in cases in which the plaintiff, like Plaintiff Wolfe here, also advances a Title VII claim. "The Seventh Circuit has expressed doubt that such instructions should be given."[11] *Pivorotto v. Innovative Systems*, 191 F.3d 344, 350 n.2 (3rd Cir. 1999) (citing *See Achor v. Riverside Golf Club*, 117 F.3d 339, 341 (7th Cir. 1997) ("Whether a given employee serves at will, or for a term of years, or under a contract requiring 'good cause' for discharge, is neither here nor there[.]")). Multiple district courts have agreed. *See*, *e.g.*, *Acosta v. Fairmount Foundry*, 391 F. Supp. 3d 395, 412 (E.D. Pa. Jun. 6, 2019) (rejecting defendant's request to include an at-will instruction in a retaliation case, explaining that whether the employee could have been terminated without cause was irrelevant to whether defendant terminated him because he engaged in protected activity); *Kingston v. Int'l Bus. Machs. Corp.*, No. C19-1488 MJP, 2021 WL 2662216, at *4 (W.D. Wa. Jun. 29, 2021) ("The jury here was properly instructed to hold Kingston to his burden of proof as to all elements of his wrongful termination claim and the lack of an 'at will' instruction did not lessen Kingston's burden of proof. The Court finds no basis for a new trial."). The Fourth, Ninth, and Tenth Circuits have addressed the issue in unpublished decisions deferring to the district court's judgment on the matter. *Kingston v. Int'l Bus. Machs. Corp.*, No. 21-35548, 2022 WL 3031590, at *2 (9th Cir. Aug. 1, 2022) ("[T]he district court did not abuse its discretion by refusing to give the jury an

---

[11] The issue also came before the Fourth Circuit in *Anthony v. Ward*, 336 Fed. Appx. 311, 321 (4th Cir. 2009) (unpublished), but the court decided the issue on grounds irrelevant to this case. *See id*. at 322 ("Because we agree with Anthony that his civil conspiracy claim is not against his employer, the employment-at-will doctrine is inapplicable.").

instruction on 'at will' employment"); *Lee v. Lockhead*, 203 Fed. Appx. 505, 506 n.5 (4th Cir. 2006) (unpublished) ("Similarly, we conclude the district court did not abuse its discretion by issuing instructions on at-will employment and mitigation of damages."); *Goodman v. Fort Howard Corp.*, 30 F.3d 141, 1994 WL 371528, at *6 (10th Cir. Jul. 18, 1994) (unpublished table decision) ("As a whole, the district court's instructions provided the jury with an understanding of the central issues in the case.  The court's instructions clearly informed the jury of the elements of Plaintiff's claims and that Defendant was liable for terminating Plaintiff's employment only if it discharged Plaintiff in retaliation for filing a workers' compensation claim.  Given these instructions, we conclude the district court's decision to exclude Defendant's proffered [sic] fairness and employment-at-will instructions was not an abuse of discretion.").

While some courts have upheld a lower court's decision to provide such an instruction in a Title VII case—finding that the decision to give such an instruction was not an abuse of discretion—these courts, applying federal law, have likewise hesitated to say that such an instruction was required for fear of the harm it would cause.  *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 350 n.2 (3d Cir. 1999) ("The better practice may be for a district court to not give such an instruction in a statutory discrimination case, especially when neither party requests it."); *Nelson v. Christian Bros. University*, 226 Fed. Appx. 448, 454 (6th Cir. 2007) (unpublished) ("This instruction did not, as Dr. Nelson contends, permit the jury to deliberate under an incorrect standard that affected this issue, and we conclude that the instruction did not constitute plain error.").  As the First Circuit summarized, "[a]lthough a district court may be allowed to use these instructions in appropriate circumstances . . . we are confident that the absence of these instructions could not have confused or misled the jury as to the controlling law."  *Kelley v. Airborne Freight Company*, 140 F.3d 335, 351 (1st Cir. 1998) (internal citations omitted); *see also Gagliardo v. Connaught*

51

*Laboratories, Inc.*, 311 F.3d 565, 572 (3d Cir. 2002) (rejecting defendant's argument that that the court should have instructed the jury that the plaintiff was an "at-will employee" and therefore defendant was free to terminate her employment so long as it wasn't for discriminatory reasons: "no cited authority holds that inclusion of this charge is a legal necessity.").

This Court will not be the first to impose such a requirement, particularly given the details of this case.    First, the Court's conclusion accords with Maryland law.    By definition, a claim for wrongful discharge is "[c]learly" an exception to "the general rule applicable to at-will employment." *Shapiro v. Massengill*, 661 A.2d 202, 214 (Md. App. 1995); *see also Wholey v. Sears Roebuck*, 803 A.2d 482, 488 (Md. 2002) ("The tort of wrongful discharge is one exception to the well-established principle that an at-will employee may be discharged by his employer for any reason, or no reason at all.").

Second, as the Court explained at trial, to have given a separate at-will instruction would likely have confused the jury as to both Plaintiff's wrongful discharge and retaliation claims.    The Court already—as Defendants concede—properly instructed the jury on the elements of a common law wrongful discharge claim using Defendants' instruction.    The Court separately instructed the jury on violation of public policy—again using Defendants' proposed instruction without any additional edits.    See ECF No. 92, at 2.    At no point did the Court instruct the jury that a Plaintiff could prevail simply by showing that the employer acted without cause.    Rather, contrary to Defendants' arguments, the instructions made clear that a plaintiff could only prevail if the employer acted based on an illegal motivation.    *See id.*; *see also* ECF No. 81, at 23 ("To succeed on Plaintiff's claim, Plaintiff must prove each of the following facts by a preponderance of the evidence: . . . Third: Defendant took the adverse employment action because of Plaintiff's protected activity. . . .    To determine that Defendant took an adverse employment action because

of Plaintiff's protected activity, you must decide that Defendant Columbia College, Inc. would not have taken the action had Plaintiff not engaged in the protected activity but everything else had been the same.").  To then separately instruct the jury as to the employer's ability to fire the Plaintiff without cause, as Defendants asked, would have left the jury confused as to whether Defendants could have terminated Plaintiff Wolfe in violation of public policy or because she complained about conditions at the College.  At a minimum, giving an additional at-will instruction, would have placed an additional thumb on the scale in favor of Defendants on both claims by emphasizing to the jury that Plaintiff Wolfe could have been fired for any reason.

Finally, there is reason to doubt that Defendants were, in fact, prejudiced by the exclusion, given the Court's detailed instruction as to the elements of wrongful discharge and, as discussed above, the presence of sufficient evidence that Defendants wrongfully discharged Plaintiff Wolfe. *See Pivorotto*, 191 F.3d at 250 n.2 (finding that the trial court's decision regarding whether to include or exclude an at-will instruction was not prejudicial where the Court "gave detailed instructions on the specifics of a Title VII sex-discrimination claim, including the plaintiff's overall burden, the multiple ways of meeting the burden, the prima facie case, and the burden-shifting analysis."); *Acosta*, 391 F. Supp. 3d at 412 ("[G]iven our charge on the elements of a retaliation claim and pretext, we see no prejudice.").[12]

### 2. The Inclusion of Defendants' Proposed Front Pay Instruction, Even if Erroneous, Was Harmless.

Defendants' arguments based on the Court's inclusion of their proposed front-pay instruction are equally unfounded.  Defendants do not contest the substance of the instruction

---

[12] The proper place for an at-will instruction is not in a claim alleging wrongful discharge, but rather breach of contract.  *See Hall v. Western Production Co.*, 988 F.2d 1050, 1058-59 (10th Cir. 1993) (finding that at-will instruction was properly used in a case involving a Plaintiff's breach of contract claim).

having proffered it themselves—but rather argue that the Court erroneously chose to give their instruction to the jury.   As an initial matter, Defendants now object to their own instruction after initially offering it and then refusing to object to it on several occasions before the Court instructed the jury.   *See Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 512 (9th Cir. 2000) (finding that Defendant waived objection to front pay instruction where "CPI objected to approximately sixteen different jury instructions at trial, but at no time did it make the argument it now advances. In fact, CPI's own proposed jury instruction on damages includes an instruction on front pay.").   Defendants initially proposed the instruction to the Court.   Neither party objected to the instruction.   Upon Defendants' request, the Court included the instruction in its final order resolving any disputes over the jury instructions.   *See* ECF No. 92.   Defendants failed to raise any concern regarding the instruction when prompted by the Court to raise any objections before the Court instructed the jury.   Defendants then objected, after the Court instructed the jury using the same instruction which Defendants proposed and then on multiple occasions failed to object to.

Regardless, as Plaintiffs note in their Opposition, the inclusion of any such instruction, even if erroneous, was harmless.   *Hutchinson v. Town of Elkton, Va.*, 904 F.2d 700, 1990 WL 76580, at *3 (4th Cir. 1990) (unpublished table decision) ("It is well established that harmless error analysis applies to jury instructions.").   The verdict form did not include a space for front pay damages, and, accordingly, the jury did not award any front pay.   All damages awarded were listed explicitly as either compensatory/non-economic damages, back pay, or punitive damages. Defendants concede the point, providing no response in their Reply.

Accordingly, the Court will deny Defendants' Rule 59(a) Motion for New Trial on all grounds.

### III.    Rule 59(e) Motion to Alter or Amend Judgment

Defendants seek to amend the judgment on two grounds.    First, Defendants argue that, by awarding Plaintiff Wolfe compensatory damages on both her Title VII retaliation and wrongful discharge claims, the jury awarded Plaintiff Wolfe an unlawful double recovery and, therefore, one award must be set aside.    ECF No. 108-1, at 35.    Next, Defendants argue that, under Maryland law, Plaintiff Maya cannot recover only punitive damages on her intentional tort claims as the jury awarded.    *Id.* at 40.    A Rule 59(e) motion "may only be granted in three situations: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'"    *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (quoting *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007)).

### A.  Plaintiff Wolfe's Compensatory Damages on Her Wrongful Discharge and Title VII Claims Do Not Clearly Constitute Double Recovery.

Defendants contend that Plaintiff Wolfe's retaliation and wrongful discharge claims arise out of the same facts and, therefore, the jury's award of compensatory damages on both claims grants Plaintiff Wolfe an unlawful double recovery.[13]    As an initial matter, "this issue was not

---

[13]  A movant typically argues that a court should review or reduce a verdict due to an alleged double recovery as part of a Rule 59 Motion.    However, it is not clear if such challenges are more appropriately raised and reviewed under Rule 59(a) or Rule 50(e).    *Compare Bennett v. R & L Carriers Shared Services, LLC*, 744 F. Supp. 2d 494 (E.D. Va. 2010), *aff'd*, 492 Fed. Appx. 315 (4th Cir. 2012) (unpublished) (considering a party's double recovery challenge to an award as part of movant's Rule 59(a) motion for new trial), *and Eschert v. City of Charlotte*, No. 3:16-CV-295-FDW-DCK, 2017 WL 3633275, at *7 (W.D.N.C. Aug. 23, 2017) (same), *with Zervitz v. Hollywood Pictures, Inc.*, 995 F. Supp. 596, 599 (D. Md. 1996) (considering defendants' request to strike an award on double recovery grounds as a motion for modification of the judgment), *and Macsherry v. Sparrows Point, LLC*, No. 1:15CV22, 2019 WL 557005, at *9 (D. Md. Feb. 12, 2019), *vacated and remanded on other grounds,* 973 F.3d 212 (4th Cir. 2020) (interpreting movant's request to strike double recovery damages as arising under Rule 59(e)), *and CPI Sec. Sys., Inc. v. Vivant Smart Home, Inc*., 710 F. Supp. 3d 438, 447 (W.D.N.C. 2024) ("Under Rule

raised pretrial, despite multiple opportunities for input into the verdict form.  Neither was the specter of double recovery raised during trial or before discharge of the jury." *Webb v. Lott*, No. 3:19-CV-2031-CMC, 2023 WL 6035718, at \*10–11 (D.S.C. Aug. 9, 2023), *aff'd*, No. 23-1941, 2024 WL 3887273 (4th Cir. Aug. 21, 2024).  Indeed, Defendants adopted Plaintiffs' proposed verdict sheet without objection, and did not request a jury instruction on double recovery. Importantly, Rule 59(e) motions "may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).  Additionally, the Court is "obliged to 'determine whether a jury verdict can be sustained, on any reasonable theory.'" *Ward v. AutoZoners, LLC*, 958 F.3d 254, 271 (4th Cir. 2020) (quoting *Atlas*, 99 F.3d at 1246).

It is true that, under Maryland law, "a plaintiff is entitled to but one compensation for her loss," *Beall v. Holloway-Johnson*, 130 A.3d 406, 419 (Md. 2016), as part of the "well-established prohibition against double recovery for the same harm," *Johnson v. Baltimore Police Dept.*, No. SAG-18-2375, 2021 WL 1610152, at \*3 (D. Md. Apr. 23, 2021) (citing *Underwood-Gary v. Mathews*, 785 A.2d 708, 713 (Md. 2001)).  *See also Vales v. Preciado*, 809 F. Supp. 2d 422, 428–29 (D. Md. 2011) ("[A] plaintiff may not recover twice for a single injury, even if the party asserts multiple theories of recovery."); *Ward*, 958 F.3d at 271–72 ("A widely accepted prohibition on duplicative damages exists") (internal quotation marks and citation omitted).  However, "a jury is not prohibited from allocating a single damages award between two distinct theories of liability." *Kadiyala v. Pupke*, No. 22-10211, 2024 WL 33910, at \*2 (11th Cir. Jan. 3, 2024) (quoting *Medina*

---

59(e), the Court has discretion to alter or amend a judgment to avoid excessive awards and prevent double recovery.").  Given that Defendants specifically request that the Court "set aside" the jury's compensatory damage awards, ECF No. 108-1, at 35, the Court will consider Defendants' request as a Motion to Alter or Amend the Judgment under Rule 59(e).

*v. Dist. of Columbia*, 643 F.3d 323, 326 (D.C. Cir. 2011)).   "Thus, a jury's award is not duplicative merely because 'it allocated the damages under two different causes of action,' so long as the jury intended that result and it is supported by the evidence at trial."  *Id.* (quoting *Gentile v. Cnty. of Suffolk*, 926 F.2d 142, 154 (2d Cir. 1991)).

Here, the jury was not instructed against allocating its total damages award across the different causes of action underlying Plaintiff Wolfe's case.   Further, the fact that the awards are so dissimilar—$1,000 on Plaintiff Wolfe's Title VII claim and $160,000 on her wrongful discharge claim—while addressing the same root "loss"—that of Plaintiff Wolfe's employment—further suggests that the jury did not intend to doubly compensate, as more equal awards would suggest, but rather to allocate a total award of $161,000 across Plaintiff Wolfe's two retaliation theories. Additionally, just as the evidence at trial was sufficient to support an award of $160,000 in compensatory damages to Plaintiff Wolfe, so does it support an award of $161,000.

Lastly, to grant a Rule 59(e) motion based on a clear error of law, the judgment "must be more than 'probably wrong; it must strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish.   It must be dead wrong."  *Finley*, 2025 WL 1592464, at *3 (quoting *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 258 (4th Cir. 2018)) (alteration in original).   Given that the jury was not instructed against allocating a total compensatory damages award to Plaintiff Wolfe for the injury of her termination across both proffered theories of liability, the jury's award does not so obviously constitute double recovery as to be considered "dead wrong."   Accordingly, the Court will not grant Defendants' motion to alter or amend the judgment on the grounds of double recovery.

## B.  Plaintiff Maya Cannot Recover Only Punitive Damages on her Intentional Tort Claims.

Allowing Plaintiff Maya to receive only punitive damages on her intentional tort claims would constitute a "clear error of law."[14] *Finley*, 2025 WL 1592464, at *9 (holding that failing to apply a state law statutory cap to a damages award would be a clear error of law). Under Maryland law, "a necessary condition for the recovery of punitive damages is an underlying award of compensatory damages." *Shabazz v. Bob Evans Farms, Inc.*, 881 A.2d 1212, 1233-34 (Md. Spec. App. 2005); *see also Bowden,* 710 A.2d at 277 ("[T]here must be an award of compensatory damages for a particular tort in order for the plaintiff to receive an award of punitive damages based upon that tort."). Plaintiffs acknowledge this well-established rule in their own Opposition brief to Defendants' Motion. ECF No. 118, at 20 ("There are two threshold conditions that parties must meet before being entitled to receive an award of punitive damages . . . the first condition is that there be a compensatory damages award underlying an award of punitive damages.") (citations omitted). Accordingly, once the jury found that Plaintiff Maya "had sustained '0' in compensatory damages" on her false imprisonment and battery claims, "it could not make an award of punitive damages." *Shabazz*, 881 A.2d at 1236. Thus, though Plaintiff Maya prevailed on her intentional tort claims, she is not entitled to recover an award of only punitive damages as

---

[14] The Court reviews Defendants' argument as a request to amend the judgment under Rule 59(e) rather than Rule 50(b). At least one Maryland court has reviewed this argument—that a court must strike a punitive damages award not accompanied by compensatory damages—under the state law equivalent of Rule 50. *See Shabazz v. Bob Evans Farms, Inc.*, 881 A.2d 1212 (Md. Spec. App. 2005) (affirming Maryland trial court's grant of defendant's motion for NJOV on the grounds that "once the jury found that Shabazz had sustained '0' in compensatory damages, it could not have made an award of punitive damages."). However, Rule 50 is concerned with the sufficiency of the evidence supporting a claim, and "is not concerned with 'pure' questions of law that are detached from the evidence, not within the domain of the jury, and only ever properly ruled upon by a judge." *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 161 (4th Cir. 2012), *as amended* (May 9, 2012). The question of whether a plaintiff can collect only punitive damages on a tort claim does not turn on the sufficiency of the evidence, but rather is purely a question of law.

a matter of law. The Court will, therefore, grant Defendants' Motion to Alter or Amend the Judgment and strike the $500 punitive damages awards on both Plaintiff Maya's battery and false imprisonment claims.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Judgment as a Matter of Law or, in the alternative, New Trial, is hereby granted in part and denied in part.

The Court GRANTS Defendants' Rule 50(b) Motion for Judgment as a Matter of Law as to the jury's award of $75,000 in punitive damages on Plaintiff Wolfe's wrongful discharge claim.

The Court GRANTS Defendants' Rule 59(e) Motion to Amend the Judgment as to the jury's awards of punitive damages on Plaintiff Maya's intentional tort claims against Defendant Bae, reducing the awards on both claims to $0 to rectify a clear error of law.

The Court DENIES Defendants' Rule 50(b) and Rule 59 Motions on all other grounds.

The Judgment shall be amended as follows: Judgment entered in favor of Kelly Wolfe against Columbia College in the amount of $175,000.00; Judgment entered in favor of Odilia Maya against Columbia College in the amount of $249,000.00.

Any Opposition to Plaintiffs' Motion for Attorney's fees shall be filed within twenty-eight days.

So ordered.

Date: August 25, 2025                           _____/s/_____
                                                 Ajmel A. Qureshi
                                                 United States Magistrate Judge